UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

DONNA M. SCOTT,                         :     Case No. C-1-02-075
                                        :
                Plaintiff,              :
                                        :
                                        :     Judge Herman J. Weber
v.                                      :     Magistrate Judge Timothy S. Hogan
                                        :
THE UNION CENTRAL LIFE                  :
  INSURANCE COMPANY,                    :     **DEFENDANT UNION CENTRAL LIFE**
                                        :     **INSURANCE COMPANY'S REPLY**
                Defendant.              :     **MEMORANDUM IN SUPPORT OF ITS**
                                        :     **MOTION FOR SUMMARY JUDGMENT**

Defendant, The Union Central Life Insurance Company ("Union Central"), respectfully requests that this Court grant its Motion for Summary Judgment. Union Central has clearly met its initial burden, showing that no genuine issue of material fact exists as to Plaintiff's federal and state claims of age discrimination, sex discrimination, unequal pay and retaliation, and her state-law public policy claim for wrongful discharge. Plaintiff has failed to produce any proof - by affidavits, depositions, answers to interrogatories, or other materials authorized by Federal Rule of Civil Procedure 56(c) - designating specific facts showing there is a genuine issue for trial.

**I.  ARGUMENT**

**A.  The Material Facts of This Case Are Not in Dispute**

The following facts, when viewed in the light most favorable to Plaintiff, the non-movant, see Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986), remain undisputed by the parties:

1. Plaintiff, Donna Scott, began working for defendant, Union Central, in 1985. (Plaintiff Dep., p. 106.)  In 1993, Plaintiff was made a Client Service Representative ("CSR") in Union

Central's Annuities Division. Plaintiff remained a CSR until the termination of her employment on April 17, 2001;

2. A CSR is a customer service position, which required Plaintiff to have a great deal of phone contact with Union Central's clients (*i.e.,* their policy holders) around the country. Many of these clients were elderly, and they depended upon Plaintiff's assistance for the timely payment of their annuity checks;

3. Plaintiff was supervised by Rebecca ("Becky") Deppen. Ms. Deppen, in turn, reported to Richard Pretty, the Vice-President in charge of the Union Central Annuity Division;

4. During Plaintiff's employment, Ms. Deppen and Mr. Pretty received numerous complaints - from Plaintiff's co-workers and Union Central's clients - about Plaintiff's poor job performance. For example, Plaintiff failed to answer the telephone; she failed to take phone messages from clients (because her voice mail was frequently full); she refused to return client telephone calls; and she failed to fulfill her "team" duties, by filling in for other CSRs who were absent from work. Plaintiff's job performance was so poor, in fact, that Ms. Deppen received more complaints about Plaintiff than any of the other CSRs who reported to her. (Rebecca Deppen Dep., pp. 97-103, 115-117; Deppen Dep. Ex. 5; Richard Pretty Dep., pp. 50-53.) On at least one instance, Plaintiff's failure to satisfactorily perform her job caused Union Central to lose the business of a large client. (Deppen Dep., p. 110.);

5. Ms. Deppen advised Plaintiff of each of these issues. Plaintiff refused to accept responsibility for her poor job performance, and blamed other people for her problems. (Deppen Dep., pp. 115, 175.);

6. Rather than work to cure her employer's concerns, Plaintiff began repeatedly nominating herself for a "Key Award." Such awards are given by Union Central to recognize its

CSRs who provide outstanding customer service. (Pretty Dep., pp. 59-63.) Plaintiff never won a Key Award;

7. Plaintiff's multiple Key Award nominations were each supported by a letter from one of the elderly clients she was supposed to be assisting. In November 2000, Union Central determined, much to its surprise, that plaintiff had solicited these letters herself. (Deppen Dep., pp. 75-76.) On one such letter, dated November 13, 2000, Plaintiff wrote to a client: "I have a favor to ask of you…. Would you mind writing a short memo stating that I am doing my job providing accurate information or processing your request in a timely and professional manner, etc." (See Plaintiff's November 13th letter, attached as Exhibit A.) Knowing that her client contact was improper, Plaintiff ended the letter with the following: "P.S. Please throw this letter away - Thanks!" (See id.);

8. Plaintiff's November 13th letter contained a lie: In the letter, Plaintiff premised her request for positive client feedback upon the fact that "[n]ext month is my yearly review…." (See Exhibit A.) That was simply untrue. Plaintiff's yearly review was not scheduled for *several* months after her request for customer solicitation;

9. At the time Union Central discovered the existence of Plaintiff's letters to her customers, in late November 2000, she was on medical leave and absent from work. When Plaintiff returned from her leave, in February 2001, she was immediately disciplined and relieved of her duties as a CSR. (See February 5, 2001 Written Discipline Warning (captioned "For the Record"), attached as Exhibit B.) Plaintiff was then advised, in writing, as follows:

> Several complaints have been received [against you] regarding:
>
> 1. External complaints about [your] lack of timely responsiveness to telephone messages.

2. Internal complaints about [your] reluctance to answer the [telephone].

3. External complaints that no matter what time of day or how frequently agency associates call, [you] rarely, if ever, answer[] the phone and as a result, they are too often forced to leave messages or go to another associate for assistance.

4. A recent situation developed where [you] set aside a problem situation for three weeks, upsetting both the client and agent.

***

[You have also] been sending letters to clients soliciting positive feedback. [You] claim[]...that comments made by a senior [Union Central] official led [you] to believe that this was an acceptable practice[;] it is not. The letters were deceptive and dishonest with respect to the timing of [your] performance evaluation.... The inappropriateness of the letters seems to have been recognized by [you] by virtue of [your] request for clients to dispose of [your] letter after receipt.

The solicitation of feedback via letters to clients needs to cease immediately.

(See id.) (brackets and ellipsis added);

10. In response to this written discipline, Plaintiff advised Mr. Pretty that: (1) she had been made the victim of "lies"; (2) she had been made to undergo "a continuing pattern of discriminatory harassment" by Ms. Deppen; and (3) she believed Ms. Deppen told her, on one occasion, that Plaintiff was "old and tired and needed a new job." (Exhibit B at 1-2; Deppen Dep., Ex. 5; Retherford Dep. pp. 14-150.) Although no facts supported these assertions, Mr. Pretty took Plaintiff's allegations very seriously, and undertook a formal investigation of Plaintiff's complaints. To ensure fairness and evenhandedness, Mr. Pretty did not involve Ms. Deppen or himself in the investigation, but asked that the investigation be conducted by Union Central's Human Resources Department. (Pretty Dep., pp. 75-76.) An H.R. representative, Connie Retherford, undertook a thorough, independent investigation of each of Plaintiff's

4

complaints, interviewed Ms. Deppen and Plaintiff's co-workers, and came to the conclusion that Plaintiff's allegations were totally without foundation or support. (See Retherford Report, attached as Exhibit C.) Retherford found that no Union Central employee had lied, or been asked to lie, with respect to Plaintiff; that, while an employee at Union Central, Plaintiff had not been the victim of any conduct which could remotely resemble discrimination (on the basis of sex, age, or otherwise) or harassment of any kind; that, while acting as Plaintiff's supervisor, Ms. Deppen had not engaged in any conduct which could be construed as discrimination or harassment; and, finally, that neither Ms. Deppen, nor anyone else at Union Central, had ever suggested to Plaintiff, or about Plaintiff, that she was "old" or "tired" or "needed a new job." (Retherford Dep., pp. 141-143, 172-175, 185-186, 254-255.) In other words, all of Plaintiff's allegations were found totally without merit;

11. After carefully considering Ms. Retherford's report, Mr. Pretty concluded that Plaintiff had, once again, lied in the course of her Union Central employment. In light of this pattern of dishonesty and untruthfulness, and also on account of Plaintiff's serious on-the-job performance problems, Pretty then terminated Plaintiff's employment. (Pretty Dep., pp. 80-81.)

## B. In Light of the Above Undisputed Facts, Plaintiff's Sex Discrimination and Age Discrimination Claims, Brought Under Federal and State Law, Must Fail

### 1. Plaintiff Cannot Demonstrate a *Prima Facie* Case of Sex Discrimination or Age Discrimination

As Union Central more fully explained in its motion for summary judgment, this Court applies the same evidentiary framework - *i.e.,* the McDonnell Douglas/Burdine shifting burden test - to Plaintiff's federal and state-law claims of sex discrimination and age discrimination. (See Union Central's Motion for Summary Judgment at 10, n.1.) Under McDonnell Douglas and Burdine, Plaintiff must come forward with direct evidence of discrimination, or produce

circumstantial evidence of discrimination via a *prima facie* case. If Plaintiff satisfies that burden, Defendant must show that its decision, to terminate Plaintiff's employment, was undertaken for legitimate, non-discriminatory reasons. Plaintiff must then demonstrate that Defendant's stated reasons were a pretext for discrimination. McDonnell Douglas v. Green, 411 U.S. 792, 802-04 (1973); Texas Dep't of Community Affairs v. Burdine, 450 U.S. 248, 252-53 (1981).

As no direct evidence of discrimination exists here, Plaintiff seeks to prove a *prima facie* case of sex discrimination or age discrimination. She cannot prove either. To prove her *prima facie* case, Plaintiff must demonstrate that: (1) she was a member of the protected class; (2) she suffered an adverse employment action; (3) she was qualified for her job; and (4) following her termination, her position was filled by a man (in her sex discrimination case) or someone substantially younger than she (in her age discrimination case). (See Union Central's Motion for Summary Judgment at 11.) In the alternative, Plaintiff must prove that: (1) she is a member of the protected class; and (2) for the same or similar conduct, she was treated differently than similarly situated male or younger employees. Mitchell v. Toledo Hosp., 964 F.2d 577, 583 (6th Cir. 1992).

### i.   **Plaintiff Was Not Qualified for Her Job**

Union Central is entitled to summary judgment because Plaintiff has failed to establish the third element of her *prima facie* case - that she was qualified for her CSR job. In order to show she was qualified, Plaintiff must prove that she was performing the job at a level that met Union Central's legitimate expectations. Ang v. Procter & Gamble Co., 932 F.2d 540, 548-49 (6th Cir. 1991); McDonald v. Union Camp Corp., 898 F.2d 1155, 1160 (6th Cir. 1990).

As the undisputed facts set forth above make clear, Plaintiff was not performing her job at a level that met Union Central's legitimate expectations: although Plaintiff had a customer

service position with extensive phone contact and worked in a team environment, she repeatedly failed to answer the phone, take phone messages, and fill in for other absent team members. In addition, she had inappropriate contact with Union Central's elderly clients (when she asked them to write her letters of recommendation); she lied to, and misled, those clients (by suggesting that she needed letters of recommendation because her annual review was "next month"); and she wrongly applied for Key Awards - using the client letters as supporting documents - as a 'smokescreen' to hide the fact, from Union Central managers, that she was not doing her job. This misconduct was so severe that Union Central relieved Plaintiff of her CSR job duties in February 2001.

Moreover, when confronted by Deppen and Pretty, at the February 2001 meeting, with the fact that she had been dishonest and had lied, Plaintiff created yet a 'second smokescreen,' and alleged, without basis, that Deppen had discriminated and/or harassed her. As the Sixth Circuit made clear in <u>Jones v. Delphi Packard Elec. Sys.</u>, No. 99-3294, 2000 U.S. App. LEXIS 4153 (6th Cir. Mar. 13, 2000) (copy attached as Exhibit D), an employee who commits falsehoods at work - as Plaintiff did in this case - does not meet her employer's legitimate expectations, and she is thus not qualified for her job. <u>See id.</u> at *6 (employee who submits false time sheets fails to meet employer's legitimate job expectations). On this basis alone, Plaintiff's *prima facie* case fails, thus entitling Union Central to summary judgment with respect to Plaintiff's federal and state age discrimination and sex discrimination claims.

### ii.  <u>Plaintiff Was Not Replaced by a Male or Someone Substantially Younger</u>

Plaintiff also fails to demonstrate the fourth element of her *prima facie* case, *i.e.,* that, following her termination, her position was filled by a man or someone substantially younger. <u>See</u> <u>O'Connor v. Consolidated Coin Caterers Corp.</u>, 517 U.S. 308, 313 (1996); <u>Hartsel v. Keys</u>,

87 F.3d 795, 800 & n.2 (6th Cir. 1996). The undisputed evidence demonstrates that Plaintiff, age 53 at the time of her termination, was replaced by Donna Anderson, a 57 year-old female.[1] (See Defendant's Answer to Plaintiff's Interrogatory 11, attached as Exhibit E.) Anderson was thus *older* than Plaintiff, not substantially younger, and *both* individuals are female. This aspect of Plaintiff's *prima facie* case thus fails as well.

### iii. Plaintiff Was Not Treated Differently than Similarly Situated Male or Younger Employees

Nor can Plaintiff satisfy the alternate *prima facie* test articulated in Mitchell v. Toledo Hospital, *supra, i.e.,* that she was treated differently than similarly situated male or younger employees. In her summary judgment opposition memorandum, Plaintiff claims that three male Union Central employees - Dan Woodard, Edwin Ericson and Jeremy Whiting - were treated more favorably than she. (Pl. Summary Judgment Opp. Memo, pp. 25, 33.)

Given that none of these three workers were similarly situated to Plaintiff as a matter of law, her argument fails. None of the three were similarly situated because none of them engaged in conduct that Plaintiff engaged in: none of the three had poor performance problems, as plaintiff did; none of the three violated Union Central policy by asking clients for recommendation letters, as Plaintiff did; none of the three misled clients, as plaintiff did; and none of the three lied to Union Central management, as plaintiff did. Accordingly, as a matter of law, plaintiff cannot compare her treatment to the treatment afforded to Woodward, Ericson and Whiting. Plaintiff's conduct merited her termination, while the conduct of the other three employees - whom were *not* similarly situated to Plaintiff - did *not* merit their termination.

---

[1] Plaintiff suggests, in her summary judgment opposition memorandum, that she was replaced by Kim Redden. (See Pl. Summary Judgment Opp. Memo, p. 33.) This is a misstatement of fact; Plaintiff was replaced by Donna Anderson, as Union Central admitted in its Answers to Plaintiff's Interrogatories. (See Def's Answer to Pl's Interrogatory 11, attached as Exhibit E.)

Moreover, the three employees were not similarly situated to plaintiff for the following additional reasons:

### Dan Woodard

Dan Woodard is discussed below, on pages thirteen and fourteen of this brief. To summarize, he was not similarly situated to Plaintiff because: (1) Plaintiff's job performance was less than, and inferior to, Woodard's job performance; (2) Plaintiff's workload was less than Woodard's workload; (3) Plaintiff had difficulty keeping up with the requirements of her job (such as returning phone calls to clients), whereas Woodard did not have that problem; (4) Woodard had an extensive prior work history handling customer service problems in the insurance business, an experience which Plaintiff did not share; and (5) Woodard was a senior claims representative, while Plaintiff was not. (See infra pp. 13-14 and citations therein.)

### Edwin Ericson

Edwin ("Eddie") Ericson was a team leader in Union Central's Annuity Division. He was not similarly situated to Plaintiff because: (1) Ericson was a team leader, and Plaintiff was not a team leader; (2) Plaintiff's job performance was less than, and inferior to, Ericson's job performance; and (3) Plaintiff's workload was less than Ericson's workload. (Retherford Dep., pp. 111-112; Deppen Dep., p. 94; Plaintiff Dep., Exhibit 11.)

### Jeremy Whiting

Jeremy Whiting was employed as a CSR in the Annuity Division. Like all CSRs, he was required to take and pass a "NASD Series 6" securities exam. He was not similarly situated to Plaintiff because: (1) it took him three or four attempts to pass the exam, whereas Plaintiff passed it on her second attempt; and (2) his Union Central pay, by Plaintiff's own admission, was

"significantly less" than what Plaintiff earned as a CSR.  (Deppen Dep., pp. 35-37; Plaintiff Dep., pp. 63, 80-81.)

Plaintiff contends that Whiting received favorable treatment - because he was permitted to take the Series 6 exam multiple times while still retaining his CSR job - but this argument is without factual support.  Ms. Deppen, who supervised both Whiting and Plaintiff, had a policy that no CSR would be terminated for failing to pass the exam.  (Deppen Dep., pp. 36-37.) Whiting and Plaintiff thus both received the same fair and equal treatment - Deppen allowed them to keep their CSR jobs while they both repeatedly attempted to pass the exam.

Plaintiff thus fails to demonstrate this aspect of her *prima facie* case.

### 2.  In the Alternative, Even if Plaintiff Can Somehow Demonstrate a *Prima Facie* Case, Union Central Has Shown That its Termination Decision Was Legitimate and Non-Discriminatory, and Plaintiff Has Failed to Show Pretext

For the reasons made clear above, Plaintiff cannot demonstrate a *prima facie* case of either age discrimination or sex discrimination.

### Legitimate, Non-Discriminatory Reasons

Assuming, *arguendo,* that Plaintiff could make such a showing, Union Central has come forward with ample, undisputed evidence to show that its termination decision was both legitimate and non-discriminatory, thus satisfying its shifting burden under McDonnell Douglas and Burdine.  See David v. ANA Television Network, Inc., Nos. 98-2288, 98-2289, 2000 U.S.App.LEXIS 2477, at *11 (6th Cir. Feb. 16, 2000) (*per curiam*) (copy attached as Exhibit F) (clarifying that this burden is "slight," and that the employer need only "articulate an acceptable explanation for its actions; the reason given need not be convincing").

In this case, Union Central easily satisfies its shifting burden because its reasons for terminating Plaintiff's employment *are* acceptable and convincing.  To that end, Union Central

reiterates that Plaintiff had serious job performance problems meriting her termination - she failed to satisfy her CSR duties by answering her telephone, returning clients' phone calls in a timely manner, and agreeing to fill in for absent co-workers on her team. More importantly, Plaintiff was dishonest with, and lied to, both Union Central clients and her supervisors. Union Central has thus articulated a valid rationale for its termination decision, Hartsel, supra, 87 F.3d at 800, and the burden shifts to Plaintiff to show pretext.

### Pretext

To establish pretext, Plaintiff bears the burden to show that: (1) Union Central's stated reasons for terminating her had no basis in fact; (2) the stated reasons did not actually motivate the adverse action; or (3) the stated reasons were insufficient to motivate the decision. Dews v. A.B. Dick Co., 231 F.3d 1016, 1021 (6th Cir. 2000).

In her summary judgment opposition memorandum, Plaintiff attempts to argue that she can demonstrate pretext because (1) her complaints to Ms. Deppen - of discrimination and harassment - had a basis in fact; and (2) her performance problems were insufficient to motivate her discharge. (Pl. Summary Judgment Opp. Memo, pp. 20-21.) Neither argument is persuasive. Retherford found, after conducting a thorough, independent investigation, that Plaintiff's complaints had no basis in fact; that Plaintiff's work performance was poor; that Plaintiff had acted dishonestly; and that, by asking clients for recommendation letters, Plaintiff had engaged in conduct which "does not represent the behavior of someone representing [Union Central]." (See Retherford Report, attached as Exhibit C, at pp. 1-2.) Retherford's investigation was a sufficient basis upon which Union Central formed an honestly held belief that Plaintiff should be terminated. In light of the "honest belief" doctrine adopted in the Sixth Circuit, Plaintiff is prohibited, as a matter of law, from demonstrating pretext. Kurincic v. Stein, Inc., No. 00-3747,

2002 U.S.App. LEXIS 2582, at *9-10 (6th Cir. Feb. 14, 2002) (copy attached as Exhibit H) (citing <u>Smith v. Chrysler Corp.</u>, 155 F.3d 799, 806 (6th Cir. 1998)).

Plaintiff cannot establish that her misconduct, dishonesty and poor work performance were not the real reasons Union Central terminated her employment.  The Sixth Circuit has repeatedly affirmed summary judgments in favor of employers who terminated employees for similar misconduct.  <u>See</u>, <u>e.g.</u>, <u>Marshall v. Summa Health Sys. Hosps.</u>, No. 01-3964, 2003 U.S. App. LEXIS 11106 (6th Cir. June 2, 2003) (attached as Exhibit G) (summary judgment proper where employer terminated plaintiff following an investigation of anonymous complaints of serious dissatisfaction with management); <u>Kurincic</u>, <u>supra</u>, 2002 U.S. App. LEXIS 2582 (attached as Exhibit H) (summary judgment for employer upheld where plaintiff was fired following an investigation into his alleged theft, which he denied).

With no evidence to show that its legitimate reasons for terminating Plaintiff were a pretext for sex or age discrimination, and recognizing, in addition, that Plaintiff is barred from introducing evidence of pretext by the "honest belief" doctrine, Union Central is entitled to summary judgment.

## C.  <u>Union Central Is Entitled to Summary Judgment Against Plaintiff's Federal Equal Pay Act and State Unequal Pay Claims</u>

Plaintiff alleges that Union Central violated the federal Equal Pay Act, 29 U.S.C. §206(d), and Ohio's state-law counterpart, Ohio Revised Code §4111.17(A), by paying her less than similarly situated male employees.  Section 4111.17 claims are resolved under the same standard that is applicable to federal Equal Pay Act claims.  <u>Creech v. Ohio Cas. Ins. Co.</u>, 944 F.Supp. 1347, 1353 (S.D.Ohio 1996) (Beckwith, J.).

Both the federal Equal Pay Act and Ohio law prohibit employers from paying an employee at a rate less than that paid to employees of the opposite sex for equal work.  To

establish a *prima facie* case under the federal Act and Ohio law, Plaintiff must show that Union Central paid employees of one sex less than employees of the opposite sex "for equal work on jobs the performance of which requires equal skill, effort, and responsibility, and which are performed under similar working conditions...." 29 U.S.C. §206(d)(1).  Resolution of such a claim depends not on job titles or classifications, but on actual job requirements and performance. See, e.g., Brennan v. Owensboro-Daviess County Hosp., 523 F.2d 1013, 1017 n. 7 (6th Cir. 1975).

If Plaintiff establishes a *prima facie* case, the burden shifts to Defendant to show that the pay differential is justified under one of the four affirmative defenses set forth in the Act: (1) a seniority system; (2) a merit system; (3) a system which measures earnings by quantity or quality of production; or (4) a differential based on any additional factor other than sex. See, e.g., Kovacevich v. Kent State Univ., 224 F.3d 806, 826 (6th Cir. 2000).

In her deposition, and again in her summary judgment opposition memorandum, Plaintiff claimed that three Union Central employees - Tom McCarthy, Edwin Ericson and Dan Woodard - were paid more than she, but were performing the same jobs with the same skill, effort and responsibility. (See Scott Dep., p. 105; Pl. Summary Judgment Opp. Memo, pp. 30-32.)  This argument is misplaced, and without support in the record, because none of the three were similarly situated to Plaintiff.

Plaintiff relies on the fact that she and the three male employees had the same job code. This is untrue. See, e.g., Deppen Dep. at 71 (clarifying that Woodard had a different job code than Plaintiff).  Plaintiff also makes the unwarranted assumption that all employees with the same job code performed equal work.  This is also untrue.  Plaintiff cannot establish that her work load, performance evaluations, and qualifications were equal to the male employees she

13

names. On the contrary, the evidence is uncontroverted that the named male employees were performing significantly more work than Plaintiff, had different workloads than Plaintiff, had better performance evaluations, or had qualifications superior to Plaintiff. (Retherford Dep., pp. 111-112; Deppen Dep., pp. 52-86). For example, Ms. Retherford determined, following her impartial investigation of the CSRs in the Annuity Division, that Plaintiff's performance and workload were less than those of the three other males in question, thus entitling Plaintiff to less pay. See Retherford Dep. at 112 ("[L]ooking at...their performance and workload, we felt there was no...reason to be concerned about the difference in the salary.") Ms. Deppen agreed with this analysis, and testified during her deposition that Plaintiff's job performance was not up to the same standards as the other CSRs within the Annuity Division. She further testified that Plaintiff had difficulty keeping up with the requirements of her job, such as the need to return phone calls in a timely manner. (Deppen Dep., p. 94.)

Ms. Deppen also testified that Woodard was paid a higher salary than Plaintiff because he was hired with the expectation that he would personally handle an unusually difficult Annuity Division client. (Deppen Dep., pp. 57-58.) Deppen further testified that such reliance upon Woodard was well placed because, unlike Plaintiff, Woodard had a prior, lengthy work history in the insurance customer service business. See Deppen Dep. at 58 (clarifying that Woodard managed an entire customer service division at Great American Insurance Company before starting work with Union Central); id. at 59, 61 (noting that, unlike Plaintiff, Woodard was hired to manage a client relationship, therefore entitling him to greater pay - that of a "senior" CSR); id. at 66 (explaining that Woodard's job duties were so specialized - and advanced beyond the work that Plaintiff was performing - that Union Central created a new job description just for his position).

14

Notwithstanding the foregoing, Plaintiff cannot establish a violation of the Equal Pay Act or §4111.17 because Union Central establishes compensation for its CSRs on a merit system. Ms. Deppen testified that CSR compensation is within an established range. Where a particular CSR fits within that range depends upon the employee's education, experience, professional licenses, performance evaluations and the caseload they carry. (Deppen Dep., pp. 30-47). Plaintiff's compensation was reasonably based upon these factors. (Id., pp. 126-133). When Plaintiff complained about her compensation, Human Resources reviewed the compensation for all employees within the Annuity Division and concluded that Plaintiff's compensation was appropriate and not based upon her gender. (Deppen Dep., pp. 128-129; Retherford Dep., pp. 111-112).

Union Central is thus entitled to summary judgment on Plaintiff's federal Equal Pay Act and Ohio Rev. Code §4111.17 claims as a matter of law.

## D. Plaintiff's State and Federal Retaliation Claims Are Without a Basis in Law, and Summary Judgment Should be Granted Against Them

Plaintiff claims that Union Central violated Title VII and state law when it retaliated against her by terminating her employment. These two retaliation claims are without a basis in law, and summary judgment should be granted against both claims.

First, as the Court is well aware, a Plaintiff can only complain of retaliation in response to Title VII "protected activity," such as the filing of a charge with the EEOC or OCRC. In this case, Plaintiff did not file her EEOC charge until *two months after* her April 17, 2001 termination. (See Pl's EEOC charge of June 19, 2001, attached as Exhibit I.) Accordingly, as a matter of law, plaintiff is barred from complaining that Union Central retaliated against her for filing a discrimination charge, given that plaintiff was no longer employed at the time her charge was filed.

Plaintiff's retaliation claims appear to be premised upon her February 2001 meeting with Ms. Deppen and Mr. Pretty, during which she complained that Deppen had supposedly harassed her or discriminated against her. Assuming, *arguendo,* that Plaintiff's complaints during that meeting rise to the level of "protected activity," because Plaintiff then opposed Union Central employment practices which she believed were discriminatory,[2] her retaliation claims nonetheless fail.

To establish a *prima facie* retaliation claim, Plaintiff must prove that: (1) she was engaged in protected activity under Ohio or federal law; (2) her engagement in protected activity was known to Defendant; (3) Defendant took an employment action adverse to Plaintiff; and (4) there was a causal connection between the protected activity and the adverse employment action. See, e.g., Johnson v. United States Dept. of Health & Human Servs., 30 F.3d 45, 47 (6th Cir. 1994); Gliatta, supra note 2, 211 F. Supp.2d at 1003. Once Plaintiff demonstrates her *prima facie* case, the burden shifts to Defendant to articulate a legitimate non-discriminatory reason for its employment action. Wrenn v. Gould, 808 F.2d 493, 501 (6th Cir. 1987). If Defendant offers a legitimate reason for its adverse employment action, the burden shifts back to Plaintiff to carry her burden of persuasion to show that the employer's stated reasons are pretextual. Id.

**1. Plaintiff Cannot Demonstrate a *Prima Facie* Case of Retaliation**

Plaintiff cannot satisfy the fourth element of her *prima facie* retaliation case - the existence of a "causal connection" between her protected activity (*i.e.,* voicing her complaints to Ms. Deppen and Mr. Pretty during the parties' February 2001 meeting) and her subsequent termination two months later, on April 17, 2001. The Sixth Circuit has clarified that, to prove the required causal connection, Plaintiff must demonstrate "evidence sufficient to raise an

---

[2] Such "opposition" activity is entitled to less protection than if Plaintiff claimed she was retaliated against for "participation" activity, *e.g.,* filing an EEOC charge. Gliatta v. Tectum, Inc., 211 F.Supp.2d 992, 1003 (S.D.Ohio 2002) (Sargus, J.).

16

inference that the protected activity was the likely motivation for the adverse action." <u>Dotson v.</u>
<u>Norfolk S. Ry. Co.</u>, No. 01-1581, 2002 U.S.App. LEXIS 24216, at *12 (6th Cir. Nov. 22, 2002)
(*per curiam*) (copy attached as Exhibit J) (citing <u>EEOC v. Avery Dennison Corp.</u>, 104 F.3d 858,
861 (6th Cir. 1997)).  Plaintiff must produce sufficient evidence from which an inference can be
drawn, in other words, that the adverse action "would not have been taken had the employee not
engaged in the protected activity." <u>Harris v. King</u>, No. 98-5826, 2000 U.S.App. LEXIS 6135, at
*8-9 (6th Cir. Mar. 29, 2000) (copy attached as Exhibit K).

    This analysis is of no help to Plaintiff, for the undisputed evidence overwhelmingly
supports the conclusion that she would have been terminated *regardless* of her engagement in
Title VII protected activity.   That evidence strongly suggests that Plaintiff was terminated
because she was dishonest at work, and because her on-the-job performance was poor.
Accordingly, she cannot show, by inference or otherwise, that her complaints to management in
the February 2001 meeting were the "likely motivation" for her termination, or that she would
not have been terminated had she not then complained to management.

    Plaintiff argues, in her summary judgment opposition memorandum, that the two-month
period - between her February 2001 meeting with management and her April 2001 termination -
suggests a causal connection.  This argument has been specifically rejected by the Sixth Circuit,
which recently held that a two-month period of time, as occurred in this case, is insufficient to
demonstrate the required causal connection.  <u>Parks v. City of Chattanooga</u>, No. 01-6543, 2003
U.S.App. LEXIS 14471, at *14 (6th Cir. July 16, 2003) (copy attached as Exhibit L).  As the
Sixth Circuit explained in <u>Parks</u>:

> The only significant evidence of causation which Parks presented
> was that he was fired approximately two months after he sent his
> complaints to [his supervisors].  Such temporal proximity alone,
> however,  does  not  support  an  inference  of  retaliatory

> discrimination, particularly where, as here, an employee's discharge is readily explainable on non-retaliatory grounds that have not been shown to be pretextual.

Id. at *14.    Accord Clark County Sch. Dist. v. Breeden, 532 U.S. 268, 273-74 (2001) (*per curiam*) (holding, by U.S. Supreme Court, that temporal proximity is sufficient to establish causation only when the events in question are "very close").

Such is the case here.  Plaintiff's termination is readily explainable on multiple non-retaliatory grounds, to wit: her poor on-the-job performance; her lies to management and about management; and her other acts of dishonesty, such as her letter writing to Union Central clients. Her *prima facie* retaliation claims thus fail because she cannot demonstrate the required causal connection.

## 2.  In the Alternative, Even If Plaintiff Can Somehow Demonstrate a *Prima Facie* Case, Union Central Has Shown That Its Termination Decision Was Legitimate and Non-Discriminatory, and Plaintiff Has Failed to Show Pretext

Assuming, *arguendo,* that Plaintiff can somehow overcome her inability to demonstrate a causal connection, and can thus demonstrate a *prima facie* case, her retaliation claims still fail because (1) Union Central has articulated legitimate, non-discriminatory reasons for its decision to terminate Plaintiff's employment, and (2) Plaintiff has failed to come forward with evidence which suggests that Union Central's stated reasons are pretextual.

Union Central's legitimate, non-discriminatory reasons include the fact that Plaintiff was dishonest with management and Union Central clients, and had poor on-the-job performance. Those reasons are not pretextual, and Plaintiff has not come forward with even a scintilla of evidence to suggest pretext.  In light of the legitimate business reasons for terminating Plaintiff's employment, *i.e.,* her pattern of dishonesty and untruthful statements, coupled with her poor work performance, Plaintiff cannot establish that Union Central's reason for terminating her was

pretextual. _See_, _e.g._, _Gliatta_, *supra* note 2 (granting summary judgment for employer on Plaintiff's retaliation claim where Plaintiff was terminated eleven days after complaining about alleged sexual harassment for Plaintiff's failure to properly manage sales leads, failing to make weekly reports on the leads, and making derogatory statements about her supervisors.)

Union Central is thus entitled to summary judgment on Plaintiff's state and federal retaliation claims.

## E.   Because Plaintiff's Age Discrimination, Sex Discrimination and Retaliation Claims Must Fail, Her State-Law Public Policy Claim Fails As Well

In her complaint, Plaintiff claims that Union Central violated Ohio public policy when it discriminated against her on the basis of her age or sex, and retaliated against her. For the reasons set forth above, Plaintiff's age discrimination, sex discrimination, and retaliation claims all lack merit and must fail. Accordingly, her Ohio public policy claim must fail as well.

Under Ohio law, the elements of wrongful discharge in violation of public policy are: (1) that clear public policy existed and was manifested in a state or federal constitution, statute or administrative regulation, or in the common law; (2) that dismissing employees under circumstances like those involved in the plaintiff's dismissal would jeopardize the public policy; (3) that plaintiff's dismissal was motivated by conduct related to the public policy; and (4) that the employer lacked overriding legitimate business justification for this dismissal. _See_, _e.g._, Collins v. Rizkana, 73 Ohio St. 3d 65, 69-70, 652 N.E. 2d 653, 657-58 (1995).

As is made clear above, Plaintiff's termination was not related in any way to her complaints regarding age or sex discrimination. Nor was she the victim of such discrimination or retaliation. On the contrary, Union Central terminated Plaintiff solely due to her pattern of dishonesty coupled with her serious performance problems. Accordingly, as the evidence is

uncontroverted that Union Central has violated no public policy, Union Central is entitled to summary judgment on this state-law claim.

## II. **CONCLUSION**

For the foregoing reasons, Union Central respectfully requests that the Court grant summary judgment in its favor on all claims.

Respectfully submitted,

Deborah DeLong (0014174)
Dinsmore & Shohl LLP
1900 Chemed Center
255 East Fifth Street
Cincinnati, OH 45202
(513) 977-8356

Trial Attorney for Defendant,
The Union Central Life Insurance Company

## **CERTIFICATE OF SERVICE**

I hereby certify that a copy of the foregoing has been served upon Randolph H. Freking, Esq., and George M. Reul, Jr., Esq., Freking & Betz, 215 East Ninth Street, Fifth Floor, Cincinnati, Ohio 45202, by hand delivery this _____ day of September, 2003.

Deborah DeLong