


The Resource for Small Law Firms

**Login | Register**
Register Now for Free ▶ ▶

Customer Support | Your Account & Subscriptions

LexisNexis™ Research
for Small Firms

Forms

LexisNexis™ Bookstore

Headline Legal News

Balancing Life and Practice

New Attorneys

Legal Web Site Directory

LexisNexis™ CLE Center



# Free Case Law

## Case Law Full Display

**Source:** 6th Circuit Court of Appeals

**Search Terms:** marshall w/10 summa

**Viewing:1 of 1 Results**
Previous | Next
Return to Search Results ▶ ▶
Compose a New Search ▶ ▶

2003 U.S. App. LEXIS 11106,*;66 Fed. Appx. 598

JOYCE MARSHALL, Plaintiff-Appellant, v. SUMMA HEALTH SYSTEMS HOSPITALS, Defendant-Appellee.

No. 01-3964

UNITED STATES COURT OF APPEALS FOR THE SIXTH CIRCUIT

66 Fed. Appx. 598;2003 U.S. App. LEXIS 11106

June 2, 2003, Filed

**NOTICE:** [*1] NOT RECOMMENDED FOR FULL-TEXT PUBLICATION. SIXTH CIRCUIT RULE 28(g) LIMITS CITATION TO SPECIFIC SITUATIONS. PLEASE SEE RULE 28(g) BEFORE CITING IN A PROCEEDING IN A COURT IN THE SIXTH CIRCUIT. IF CITED, A COPY MUST BE SERVED ON OTHER PARTIES AND THE COURT. THIS NOTICE IS TO BE PROMINENTLY DISPLAYED IF THIS DECISION IS REPRODUCED.

**PRIOR HISTORY:** On Appeal from the United States District Court for the Northern District of Ohio. 00-02629. Dowd, Jr. 08-13-01.

**DISPOSITION:** Affirmed.

**COUNSEL:** For JOYCE MARSHALL, Plaintiff - Appellant: Brian J. Williams, Akron, OH.

For SUMMA HEALTH SYSTEMS HOSPITALS, Defendant - Appellee: James D. Kurek, Roetzel & Andress, Akron, OH.

**JUDGES:** BEFORE: RYAN and BATCHELDER, Circuit Judges; TARNOW, District Judge. *
* The Honorable Arthur J. Tarnow, United States District Judge for the Eastern District of Michigan, sitting by designation.

**EXHIBIT**

G

Shepar
citation
$4.25 ▶

Get the
feature
this ca
▶ ▶

Run th
search
for $9.

**Tell m**
View a
these
service

LexisN
for Sm
**lex**

Your S
Resear
One Da

Exclusi
Membe
Case L
Codes:
One Da

Exclusi
Membe
State a
Case L
Codes:
One Da

Up

**OPINIONBY:** RYAN

**OPINION:** RYAN, Circuit Judge. Joyce Marshall appeals the district court's grant of summary judgment in favor of her former employer, Summa Health Systems Hospitals, on her claims of sex discrimination in violation of Title VII, 42 U.S.C. §§ 2000e-2000e-17, and age discrimination in violation of the Age Discrimination [*2] in Employment Act, 29 U.S.C. §§ 621-634. The district court concluded that Marshall failed to establish a *prima facie* case of sex discrimination and, as to both theories of discrimination, failed to create a genuine issue of material fact about whether Summa's legitimate, non-discriminatory explanation for Marshall's discharge was pretextual. We assume, for the sake of decision, that Marshall established a *prima facie* case on her sex discrimination claim, but we agree with the district court that Marshall failed to provide any evidence demonstrating pretext. We therefore affirm the district court's judgment.

Beginning in 1989, Marshall served as the clinical education coordinator in Summa's respiratory care department. In early 1999, Summa received two anonymous letters criticizing Marshall and the other managers responsible for the department. Summa investigated these complaints by convening small group meetings with 58 of the department's staff members. These meetings revealed serious dissatisfaction with management, and the groups specifically requested new managers. Following the investigation, Summa terminated Marshall and two other female managers [*3] who shared day-to-day responsibilities for the respiratory care department. Summa elected to retain the male manager with ultimate oversight responsibility for the respiratory care and pharmacy departments. Eventually, Summa replaced Marshall, who was approximately 58 years old at termination, with a 40 year old woman.

We review a grant of summary judgment *de novo. Policastro v. Northwest Airlines, Inc.,* 297 F.3d 535, 538 (6th Cir. 2002). Summary judgment is appropriate when, viewing the evidence in the light most favorable to the non-moving party, "there is no genuine issue as to any material fact and ... the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c); *Policastro,* 297 F.3d at 538.

Claims of employment discrimination brought pursuant to Title VII and the ADEA are governed by the same, familiar, burden-shifting framework. *Policastro,* 297 F.3d at 538-39. If a plaintiff establishes a *prima facie* case of discrimination, the employer must provide a legitimate, non-discriminatory explanation for the adverse employment action. *Wexler v. White's Fine Furniture, Inc.,* 317 F.3d 564, 574 (6th Cir. 2003). [*4] The plaintiff then bears the burden to demonstrate pretext "'by showing that the proffered reason (1) has no basis in fact, (2) did not actually motivate the defendant's challenged conduct, or (3) was insufficient to warrant the challenged conduct.'" *Id.* at 576 (quoting *Dews v.*

*A.B. Dick Co.*, 231 F.3d 1016, 1021 (6th Cir. 2000)).

Assuming that Marshall established a *prima facie* case on both claims, we conclude that she failed to create a genuine issue of material fact regarding pretext. Marshall suggests that her positive performance evaluations from past years should have outweighed the staff complaints, but she points to nothing suggesting that Summa violated Title VII or the ADEA by resolving this balance against her. Indeed, Marshall's own deposition belies her claim that Summa did not fire her for the legitimate business reason it advances. In that deposition, Marshall acknowledged that the staff complained about her and that Summa terminated her in response to the "disgruntled staff." Thus, while Marshall insists that the complaints against her were unjustified, she concedes that Summa received the complaints, investigated them, and relied [*5] upon them in terminating her and her fellow supervisors. In short, the record contains no evidence tending to show that Summa's nondiscriminatory explanation has no basis in fact, did not actually motivate the decision, or was insufficient to warrant her termination. We therefore **AFFIRM** the judgment of the district court.

Viewing:1 of 1 Results

Previous | Next

Return to Search Results ▶ ▶

Compose a New Search ▶ ▶

Back to Top ▶ ▶

SEARCH lexisONE Site ▾    GO

 LexisNexis™    Customer Support   Site Map   LawCommerce.com

www.lexisnexis.com    Terms & Conditions    Privacy

© 2003 LexisNexis, a division of Reed Elsevier Inc. All rig





### lexis**one**®
The Resource for Small Law Firms

**Logout**

Customer Support | Your Account & Subscriptions

LexisNexis™ Research
for Small Law Firms

Forms

LexisNexis™ Bookstore

Headline Legal News

Balancing Life and Practice

New Attorneys

Legal Web Site Directory

LexisNexis™ CLE Center



# Free Case Law

## Case Law Full Display

**Source:** 6th Circuit Court of Appeals

**Search Terms:** smith w/5 chrysler

**Viewing:10 of 27 Results**
Previous | Next
Return to Search Results ▸▸
Compose a New Search ▸▸

Up

Shepar
citatior
$4.25!

Get the
feature
this ca
▸▸

2002 U.S. App. LEXIS 2582,*;30 Fed. Appx. 420

ALOJZ KURINCIC, Plaintiff-Appellant, v. STEIN, INC.,
Defendant-Appellee.

No. 00-3747

UNITED STATES COURT OF APPEALS FOR THE SIXTH CIRCUIT

30 Fed. Appx. 420;2002 U.S. App. LEXIS 2582

February 14, 2002, Filed

Run th
search
for $9.

**Tell m**
View a
these (
service

**NOTICE:**    [*1]  NOT RECOMMENDED FOR FULL-TEXT
PUBLICATION. SIXTH CIRCUIT RULE 28(g) LIMITS CITATION
TO SPECIFIC SITUATIONS. PLEASE SEE RULE 28(g) BEFORE
CITING IN A PROCEEDING IN A COURT IN THE SIXTH
CIRCUIT. IF CITED, A COPY MUST BE SERVED ON OTHER
PARTIES AND THE COURT. THIS NOTICE IS TO BE
PROMINENTLY DISPLAYED IF THIS DECISION IS
REPRODUCED.

LexisN
for Sm

lex

**PRIOR HISTORY:**  ON APPEAL FROM THE UNITED STATES
DISTRICT COURT FOR THE NORTHERN DISTRICT OF OHIO.
99-01297. Nugent. 05-09-00.

Your S
Resear
One Da

**DISPOSITION:**  AFFIRMED.

Exclusi
Membe
Case L
Codes:
One Da

**COUNSEL:**  For ALOJZ KURINCIC, Plaintiff - Appellant: Paul
Mancino, Jr., Mancino, Mancino & Mancino, Cleveland, OH.

For STEIN, INC., Defendant - Appellee: Stephen C. Sutton,
Millisor & Nobil, Cleveland, OH.

Exclusi
Membe
State a
Case L
Codes:
One Da

For STEIN, INC., Defendant - Appellee: Keith L. Pryatel,
Kastner, Westman & Wilkins, Akron, OH.

**EXHIBIT**

H

**JUDGES:** Before: DAUGHTREY, GILMAN, and GIBSON, *
Circuit Judges. JOHN R. GIBSON, Circuit Judge, dissenting.
* The Honorable John R. Gibson, Senior Circuit Judge of the
United States Court of Appeals for the Eighth Circuit, sitting by
designation.

**OPINIONBY:** RONALD LEE GILMAN

**OPINION:**

**RONALD LEE GILMAN, Circuit Judge.** Alojz Kurincic brought
suit in state court against Stein Inc., his former employer. He
alleged that his termination [*2] from employment violated
the Age Discrimination in Employment Act (ADEA), 29 U.S.C.
§§ 621-634, and Ohio's general employment discrimination
statute, Ohio Revised Code § 4112. In addition, Kurincic sued
Stein for promissory estoppel, wrongful discharge in violation
of Ohio public policy, and conversion. After removing the case
to the appropriate federal district court. Stein moved for
summary judgment. The district court granted summary
judgment to Stein on Kurincic's age-discrimination, promissory
estoppel, and public policy claims, and remanded the
conversion claim to state court. For all of the reasons set forth
below, we **AFFIRM** the judgment of the district court.

## I. BACKGROUND

### A. Factual background

This case arises from Kurincic's termination of employment in
1998. Kurincic had worked as a mechanic at Stein, which
performs slag removal services for various Ohio steel mills.
Stein discharged Kurincic after he allegedly submitted a time
sheet that falsely reported his attendance at a workplace
safety meeting. The safety meeting was held on April 8, 1998.
Edward Konopka, a shift supervisor at Stein, saw Kurincic sign
the meeting's attendance [*3] sheet and then leave the
meeting room 15 minutes before the meeting began. He never
saw Kurincic return to the meeting room.

Konopka later collected Kurincic's time sheet. He noticed that
the time sheet reported that Kurincic had spent 30 minutes of
work time attending the meeting. Because the payroll
department used the time sheets to determine pay, Konopka
suspected Kurincic of falsely claiming compensation to which
he was not entitled. He subsequently informed Mark Huscroft,
a superintendent at Stein, of his suspicion.

Huscroft commenced an investigation shortly thereafter. First,
Huscroft compared Kurincic's time sheet with Kurincic's time-
clock card, which showed that Kurincic had clocked out ten
minutes before the meeting began. He next met with four
employees who had attended the safety meeting, all of whom
stated that Kurincic was not in attendance. Huscroft then
confronted Kurincic. Kurincic initially told Huscroft that he had

attended the meeting. But when presented with his time-clock card and the statements of his fellow employees, Kurincic acknowledged that he had not attended. He attempted to explain his absence by stating that he became ill shortly after signing the [*4] attendance sheet and thus had to leave the meeting room. Kurincic said that the illness eventually subsided, but only after the end of the meeting. Rejecting this explanation, Huscroft discharged Kurincic for theft.

## B. Procedural background

Following his discharge, Kurincic sued Stein in state court. He alleged that Stein had discharged him in violation of the ADEA and Ohio Revised Code § 4112. Kurincic did not specify how his discharge violated § 4112, a statute that prohibits employment discrimination on the basis of race, color, religion, sex, national origin, disability, age, or ancestry. His complaint stated, however, that he was 55 years-old at the time of his discharge and that his national origin is Slovenian.

Kurincic also sued Stein for promissory estoppel. He alleged that Stein had promised to discharge him only for just cause, that he had relied on the promise, and that Stein nevertheless discharged him without just cause.

Another of Kurincic's claims was for wrongful discharge based on Ohio public policy. According to Kurincic, Ohio public policy prohibits an employer from discharging an employee on the basis of age or national origin. Kurincic alleged [*5] that Stein terminated his employment for both reasons.

Finally, Kurincic asserted a claim for conversion, claiming that a Stein employee removed the personal items that he had kept in his work locker. The employee allegedly converted Kurincic's property at Stein's request.

Based on the federal question presented by Kurincic's ADEA claim. Stein removed the case to the United States District Court for the Northern District of Ohio. Stein then filed a motion for summary judgment, arguing that Kurincic's claims either lacked evidentiary support or were legally barred. The district court granted Stein's motion with regard to Kurincic's age-discrimination. promissory estoppel, and public policy claims, but remanded the conversion claim to state court. In addition, the district court concluded that Stein had not pled a claim of national-origin discrimination.

Kurincic subsequently filed this timely appeal. He contends that the district court erred in granting summary judgment to Stein on his age-discrimination and promissory estoppel claims, and that the district court erroneously concluded that he had not pled a claim of national-origin discrimination.

## II. ANALYSIS

### A. Standard [*6] of review

lexisONE(sm) Free Case Law
Case 1:02-cv-00075-HJW    Document 27-3    Filed 09/08/2003    Page 7 of 26
Page 4 of 13

We review de novo the district court's grant of summary judgment. *Holloway v. Brush*, 220 F.3d 767, 772 (6th Cir. 2000). Summary judgment is proper where there are no genuine issues of material fact in dispute and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56 (c). In deciding a motion for summary judgment, the court must view the evidence and draw all reasonable inferences in favor of the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 89 L. Ed. 2d 538, 106 S. Ct. 1348 (1986). The judge is not to "weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249, 91 L. Ed. 2d 202, 106 S. Ct. 2505 (1986). A genuine issue for trial exists only when there is sufficient "evidence on which the jury could reasonably find for the plaintiff." *Id.* at 252.

## B. Stein was entitled to summary judgment on Kurincic's age-discrimination claims

Kurincic argues that the district court erred in granting summary judgment to Stein on his age-discrimination [*7] claims. We find no merit to this argument.

Both the ADEA and Ohio Revised Code § 4112 prohibit an employer from discharging an employee on the basis of the employee's age. 29 U.S.C. § 623(a); Ohio Rev. Code § 4112.02(A). An employee may establish a claim under either statute by offering direct or indirect evidence of age discrimination. *Kline v. Tenn. Valley Auth.*, 128 F.3d 337, 348 (6th Cir. 1997) (setting forth the manner in which a plaintiff may prove unlawful discrimination under the ADEA); *Bucher v. Sibcy Cline, Inc.*, 137 Ohio App. 3d 230, 738 N.E.2d 435, 442 (Ohio Ct. App. 2000) (stating that the standards governing ADEA claims also apply to claims under Ohio Revised Code § 4112). Direct evidence of discrimination is "that evidence which, if believed, requires the conclusion that unlawful discrimination was at least a motivating factor in the employer's actions." *Jacklyn v. Schering-Plough Healthcare Prods. Sales Corp.*, 176 F.3d 921, 926 (6th Cir. 1999). Indirect evidence of discrimination, on the other hand, permits the inference that an employer acted with discriminatory animus. *Kline*, 128 F.3d at 348. [*8]

We first consider whether Kurincic offered direct evidence of age discrimination. Kurincic argues that his affidavit contained direct evidence of Stein's discriminatory animus. In his affidavit, Kurincic stated that he "was informed by Dan, a co-worker and personal friend of Mark Huscroft, that Huscroft wanted to get rid of old employees . . . ." But the statement by "Dan" is inadmissible hearsay. Hearsay is defined as an out-of-court statement offered for the truth of the matter asserted. Fed. R. Evid. 801(c). The statement by Dan to Kurincic is hearsay because it was offered for the truth of the matter asserted; namely, that Huscroft in fact wanted to "get rid of

old employees." Although the statement allegedly attributable to Huscroft as a supervisor might not be considered hearsay if it had been said directly to the testifying witness, Fed. R. Evid. 801(d)(2), it became hearsay when repeated through Dan to Kurincic. Kurincic thus failed to offer any direct evidence of discrimination. We must therefore decide whether Kurincic offered sufficient indirect evidence to permit an inference of age discrimination.

A three-step framework guides the analysis of age-discrimination claims [*9] based upon indirect evidence. *Ercegovich v. Goodyear Tire & Rubber Co.*, 154 F.3d 344, 350 (6th Cir. 1998) (explaining the burden-shifting analysis for ADEA claims). This framework first requires an employee to establish a prima facie case of age discrimination. *Id.* If the employee meets this burden, the employer may respond by offering a legitimate, nondiscriminatory reason for the adverse employment action at issue. *Id.* The employee then has the burden of rebutting this proffered reason by proving that it was a pretext designed to mask age discrimination. *Id.*

In the present case, the district court held that, even assuming Kurincic offered sufficient evidence to establish a prima facie case of age discrimination, he nevertheless failed to show that Stein's legitimate, nondiscriminatory reason for his discharge--his alleged theft--was pretextual. We agree with the district court's conclusion.

This court has adopted an "honest belief" rule with regard to an employer's proffered reason for discharging an employee. *Smith v. Chrysler Corp.*, 155 F.3d 799, 806-07 (6th Cir. 1998). Under this rule, so long as an employer honestly believed in [*10] its proffered nondiscriminatory reason for discharging an employee, the employee cannot establish that the reason was pretextual simply because it is ultimately shown to be mistaken or incorrect. *Id.* at 806. An employer has an honest belief in its reason for discharging an employee when the employer reasonably relied "on the particularized facts that were before it at the time the decision was made." *Id.* at 807.

The evidence in this case supports Stein's claim that it honestly believed in its proffered nondiscriminatory reason for discharging Kurincic. Stein discharged Kurincic only after taking reasonable steps to confirm that he did not attend the safety meeting despite the contrary notation on his time sheet. Thus, in choosing to discharge Kurincic for theft, Stein made a "reasonably informed and considered decision." *Id.*

Kurincic, however, insists that Stein could not have reasonably believed that he committed theft. First, Kurincic denies that he ever intended to submit his false time sheet. He states that he completed his time sheet before the meeting, but Konopka collected the sheet "prematurely." Kurincic offers no evidence, however, [*11] showing that Stein had any reason to believe that his time sheet was collected in error. He did not so state

when confronted by Huscroft. Instead, Kurincic initially insisted that he had actually attended the meeting, and admitted otherwise only when presented with evidence proving that he was not in attendance.

This, in our opinion, refutes the dissent's position that a genuine issue of material fact exists as to whether Stein had a reasonable belief that it possessed a valid basis for discharging Kurincic. We believe that any person in Kurincic's situation who had not truly intended to request unearned pay would have immediately pointed out that the failure to correct his time sheet was an oversight. Instead, when first confronted by Huscroft, Kurincic falsely insisted that he had in fact attended the meeting. Such evasive conduct, in our view, makes his subsequent claim of innocence so unbelievable that all reasonable jurors would conclude that Stein honestly believed that Kurincic sought pay that he had not earned.

Second, Kurincic contends that, even if he did intentionally submit a false time sheet, he did not commit theft because he never received any payment for attending  [*12]  the meeting. He offers no reasonable explanation, however, as to why Stein had to delay his discharge until after he received compensation based on his false time sheet. Attempted theft is sufficient grounds for termination under Stein's policy against employee theft. *Cf.* Ohio Rev. Code § 2913.01(K) (defining a "theft offense" for purposes of Ohio law as including both the commission and the *attempt to commit* various criminal offenses). Moreover, even if Stein had incorrectly determined that attempted theft warranted termination under its policy, the honest belief rule prevents Kurincic from using the alleged mistake to prove that Stein's proffered reason for his discharge was simply a pretext to mask age discrimination. *Smith*, 155 F.3d at 806.

Finally, Kurincic maintains that Stein's contention that it discharged him for theft is belied by the conclusion of the Ohio Unemployment Compensation Review Commission (the Commission) that he was discharged without just cause. But the Commission's determination was made more than three months after Stein discharged Kurincic. Under this circuit's honest belief rule, Kurincic cannot show that Stein's proffered reason  [*13]  for his discharge was pretextual simply by offering evidence that Stein's decision was later found incorrect. The probative value of the Commission's determination, moreover, is limited by the fact that Stein presented no evidence at the hearing on Kurincic's unemployment claim.

Based on the above factors, we conclude that Kurincic failed to offer sufficient direct or indirect evidence of age discrimination. We therefore hold that the district court did not err in granting Stein's motion for summary judgment on Kurincic's federal and state age-discrimination claims.

## C. Stein was entitled to summary judgment on

## Kurincic's promissory estoppel claim

Kurincic next contends that the district court erred in granting summary judgment to Stein on his promissory estoppel claim. We disagree. In suing for promissory estoppel, Kurincic alleged that he was promised by one of Stein's managers that he would be discharged only for just cause. The collective bargaining agreement (CBA) governing Kurincic's employment with Stein, however, already provided that he could be discharged only upon a determination of just cause. He must thus base any wrongful discharge claim on the "just cause" [*14] provision in the CBA, not on an oral promise made outside of the collective bargaining process. *Fox v. Parker Hannifin Corp.*, 914 F.2d 795, 801 (6th Cir. 1990) (holding that a bargaining unit employee could not base a promissory estoppel claim on a promise made other than in the CBA).

But even if we were to recast Kurincic's promissory estoppel claim as alleging a breach of the CBA, it would do him no good. A claim for the breach of a CBA may only be brought under § 301 of the Labor Management Relations Act, 29 U.S.C. § 185. *Franchise Tax Bd. v. Construction Laborers Vacation Trust*, 463 U.S. 1, 23, 77 L. Ed. 2d 420, 103 S. Ct. 2841 (1983) (stating that § 301 displaces any state cause of action for breach of a CBA). To sue under § 301, Kurincic would have had to bring suit within six months of the alleged breach of the CBA. *Fox*, 914 F.2d at 803 (holding that § 301 actions brought by individual employees are governed by a six-month statute of limitations). He did not file the present action, however, until more than one year after the termination of his employment. Accordingly, we conclude that the district [*15] court did not err in granting Stein's motion for summary judgment on Kurincic's promissory estoppel claim.

## D. Stein was entitled to summary judgment on Kurincic's national-origin discrimination claim

Kurincic insists that he asserted a claim for national-origin discrimination in his complaint. He further argues that he offered sufficient evidence to reach the jury on this claim. We agree that Kurincic pled a national-origin discrimination claim in his complaint. The first count in Kurincic's complaint both states his national origin and alleges that his discharge violated Ohio Revised Code § 4112, a statute that prohibits, among other things, national-origin discrimination. Under the notice pleading standard of Rule 8 of the Federal Rules of Civil Procedure, the first count of the complaint therefore asserts a claim of national-origin discrimination under Ohio law. Fed. R. Civ. P. 8(a) (stating that a complaint must set forth "a short and plain statement" of a claim for relief); *Conley v. Gibson*, 355 U.S. 41, 47, 2 L. Ed. 2d 80, 78 S. Ct. 99 (1957) ("The Federal Rules of Civil Procedure do not require a claimant to set out in detail the facts upon which [*16] he bases his claim."). The district court thus erred in concluding that Kurincic had failed to properly plead a national-origin

discrimination claim.

Nevertheless, our review of the record convinces us that Kurincic failed to offer sufficient evidence of national-origin discrimination to withstand summary judgment. As with his age-discrimination claims, Kurincic may establish a national-origin discrimination claim by offering either direct evidence of discrimination or indirect evidence establishing an inference of discrimination. *Shannahan v. B.F. Goodrich Aerospace Landing Gear Div.*, 1999 U.S. App. LEXIS 11116, 1999 WL 357823, at *2 (6th Cir. May 26, 1999) (unpublished table decision) (stating that an employee can prove national-origin discrimination under Title VII of the 1964 Civil Rights Act by offering either direct or indirect evidence of discrimination); *Bucher*, 738 N.E.2d at 442 (stating that Ohio courts analyze claims under Title VII and Ohio Revised Code § 4112 under federal case law interpreting Title VII). Kurincic offered neither type of evidence.

First, Kurincic failed to timely present any direct evidence of national-origin discrimination. Although [*17] Kurincic stated in a late-filed affidavit that Huscroft called him a "DP," a slang term for "displaced person," Kurincic earlier testified during his deposition that he never heard Huscroft make any derogatory remarks about his national origin. "A party may not create a factual issue by filing an affidavit, after a motion for summary judgment has been made, which contradicts . . . earlier deposition testimony." *Reid v. Sears, Roebuck & Co.*, 790 F.2d 453, 460 (6th Cir. 1986).

Second, Kurincic failed to offer evidence sufficient to establish an inference of national-origin discrimination. As previously explained, Kurincic offered no evidence showing that Stein lacked an honest belief in its legitimate, nondiscriminatory reason for his discharge. He thus could not prove that Stein's proffered reason was a pretext designed to mask national-origin discrimination.

Based on the above, we hold that Stein was entitled to summary judgment on Kurincic's national-origin discrimination claim.

### E. Stein is not entitled to sanctions under Rule 38 of the Federal Rules of Appellate Procedure

The final issue presented for our consideration is Stein's motion for sanctions [*18] under Rule 38 of the Federal Rules of Appellate Procedure. Stein strenuously argues that Kurincic's appeal is frivolous. Under Rule 38, a frivolous appeal may justify the imposition of sanctions:If a court of appeals determines that an appeal is frivolous, it may, after a separately filed motion or notice from the court and reasonable opportunity to respond, award just damages and single or double costs to the appellee.Fed. R. App. P. 38.

Because of the risk that Rule 38 sanctions will dissuade

litigants from bringing meritorious appeals, a decision of whether to impose such sanctions is generally a "difficult choice." *Wilton Corp. v. Ashland Castings Corp.*, 188 F.3d 670, 677 (6th Cir. 1999) (recognizing the risk that the imposition of sanctions will chill appeals that involve "serious, controversial, doubtful, or even novel questions"). Rule 38 sanctions are therefore imposed in only rare circumstances, most often "where there is some evidence of intentional misconduct, such as pursuit of an appeal in bad faith or for purposes of harassment, delay or other improper purposes." *Boggild v. Kenner Prods., Div. of CPG Prods. Corp.*, 853 F.2d 465, 470 (6th Cir. 1988). [*19] An appeal may also warrant sanctions if it "essentially had no reasonable expectation of altering the district court's judgment based on law or fact." *Wilton Corp.*, 188 F.3d at 677 (imposing sanctions after concluding that the appeal was "wholly without merit").

In the present case, Stein contends in its brief that Kurincic's appeal "screams" for sanctions because it was brought in bad faith and is completely devoid of merit. We disagree. First, the record contains no compelling evidence of bad faith on the part of Kurincic or his counsel in bringing this appeal. Second, as shown by our preceding analysis, the arguments presented in this appeal are not so implausible as to be considered frivolous. We therefore deny Stein's request for sanctions under Rule 38.

### III. CONCLUSION

For all of the reasons set forth above, we **AFFIRM** the judgment of the district court.

**DISSENTBY:** JOHN R. GIBSON

**DISSENT: JOHN R. GIBSON, Circuit Judge,** dissenting.

I dissent. The court errs today in its treatment of the pretext issue, and in concluding there was no genuine issue of material fact as to whether Kurincic committed theft.

Kurincic signed the attendance sheet for the [*20] safety meeting and filled out a mechanic's report for the day showing the figure one-half in a column following the entry "toolbox meeting and safety meeting." His timecard shows that he punched out at 6:21 a.m. and the meeting commenced at 6:30 a.m. Kurincic stated, both in an affidavit and during deposition, that he had taken a seat in the meeting room, became ill, went to the men's room and changed clothes, and did not return to the meeting. In response to requests for admissions, Kurincic admitted that his signature was on the sign-up sheet and the mechanic's report, but denied that he requested payment for attending the meeting.

Konopka, the foreman, confirmed that Kurincic had entered the meeting room shortly after 6:00 a.m. and signed the

meeting sheet, but that he left before the meeting started. After the meeting concluded, Konopka collected the mechanic's reports of the employees and saw that Kurincic's report solicited payment for one-half hour of attendance at the safety meeting. Konopka then obtained Kurincic's timecard and noticed that Kurincic had punched out at 6:21 a.m. Konopka confronted Kurincic, who insisted that he attended the meeting. When Konopka said he knew [*21] Kurincic was not present at the meeting, Kurincic stated that he initially showed up but was forced to depart early, having become ill unexpectedly. Aware that Stein has "a zero-tolerance policy" for employee theft, Konopka spoke to Mark Huscroft, the superintendent, that day.

Huscroft made inquiries of other employees who had attended the meeting and obtained the mechanic's report and the safety meeting sign-in sheet. Because "Stein, Inc. has zero tolerance for theft or suspected theft of the Company," (Aff. of Mark Huscroft at 2), Huscroft made an initial decision to terminate Kurincic. Huscroft then told the union steward, Rogers, of his decision. According to Huscroft, Rogers then said that he had seen "Kurincic walking toward the employee parking lot with a bag in his hand," having "changed out of his work clothes, before the conclusion of the April 8, 1998 safety meeting." (*Id.* at 3.) Huscroft also talked to James Conlon, Vice President and General Counsel of Stein. Conlon stated that Stein's "rather uniform policy . . . is zero tolerance for any instances of employee theft. Accordingly, I approved the termination . . . ." (Aff. of James Conlon at 2.)

Kurincic testified [*22] in his deposition that Huscroft told him the reason for termination was his "stealing half an hour of company time." n1 (Dep. of Alojz Kurincic at 47-48.)

- - - - - - - - - - - - - - Footnotes - - - - - - - - - - - - - - -

n1 The Vice President and General Counsel, Conlon, suspected that Kurincic's locker and toolbox may have contained Stein equipment and parts, and he arranged to have it opened, on videotape, in the presence of union officials. Conlon stated that three pumps were in the locker which "appeared to resemble the type of equipment used by Stein" and one of its customers (Aff. of James Conlon at 3), but Kurincic stated that these were his personal property. Stein does not contend that it fired Kurincic because stolen property was found in Kurincic's locker.


- - - - - - - - - - - - End Footnotes- - - - - - - - - - - - - -

Our standard of review requires us to consider the facts in the light most favorable to the non-moving party, Kurincic. So viewed, the evidence here creates genuine issues of material fact as to whether Kurincic committed theft and whether Stein should have concluded that he did so. First, Konopka acknowledged [*23] that Kurincic was in the meeting room

shortly before the meeting started. Second, Kurincic checked out on the timecard at 6:21. Third, Rogers reported seeing Kurincic leaving the parking lot before the *conclusion* of the meeting. These facts are all in accord with Kurincic's explanation that he intended to attend the meeting, only left the meeting because he became ill, and did not intend to "steal" time from his employer. In addition. Stein's practice of paying no attention to timecards except for audit purposes raises further questions about the legitimacy of Stein's proffered explanation for its decision to terminate Kurincic. (Aff. of Mark Huscroft at 2.)

I am convinced the facts taken in the light most favorable to Kurincic are insufficient to support Stein's conclusion that there was theft. Theft is defined by law. On the facts presented to Stein's general counsel, his conclusion that theft occurred was legally unsupportable. Kurincic was never paid for the meeting. There was no taking, or obtaining, or exerting control over property. Moreover, there was evidence before Stein that Kurincic did not intend to skip the meeting when he signed the sheet, but that he was forced  [*24]  to leave because he got sick.

The court today attempts to prop up its decision by stating that "attempted theft is sufficient grounds for termination under Stein's policy against employee theft." *Supra* p. 8. Vice President and General Counsel Conlon, however, did not give attempted theft as the justification for discharge. Theft, plain and unvarnished, was the conclusion of Konopka, Huscroft, and Conlon, and was the reason Huscroft gave Kurincic for his firing. Ohio Revised Code § 2913.01(K) defining "a theft offense" as including an attempt adds nothing to the analysis, nor does Huscroft's addition of the term "suspected" theft. Purely and simply, there was no theft. This makes applicable the following statement of Justice O'Connor in *Reeves v. Sanderson*, 530 U.S. 133, 120 S. Ct. 2097, 147 L. Ed. 2d 105 (2000):In appropriate circumstances, the trier of fact can reasonably infer from the falsity of the explanation that the employer is dissembling to cover up a discriminatory purpose. Such an inference is consistent with the general principle of evidence law that the factfinder is entitled to consider a party's dishonesty about a material fact as affirmative evidence of guilt. Moreover,  [*25]  once the employer's justification has been eliminated, discrimination may well be the most likely alternative explanation, especially since the employer is in the best position to put forth the actual reason for its decision.*Id.* at 147 (internal citation and quotation marks omitted).

I also conclude that the court today stretches too far in applying the honest belief rule, as articulated in *Smith v. Chrysler*, 155 F.3d 799 (6th Cir. 1998) (Gilman, J.). *Smith* stated that in order for an employer's proffered reason to be considered "honestly held," the employer "must be able to establish its reasonable reliance on the particularized facts that were before it at the time the decision was made." *Id.* at 807. This does not mean that an employer can shelter itself

behind a shoddy investigation or prevent the fact finder from resolving disputed facts. Even if the employer points to particularized facts motivating the decision, the employee has the opportunity to produce "proof to the contrary." *Id.* (quoting *Pesterfield v. TVA*, 941 F.2d 437, 443 (6th Cir. 1991)). One kind of proof to the contrary is evidence [*26] that the employer's reasoning or investigation was obviously flawed: "As one court noted in a similar context, 'if the employer made an error too obvious to be unintentional, perhaps it had an unlawful motive for doing so.'" *Id.* (quoting *Fischbach v. Dist. of Columbia Dept. of Corr.*, 318 U.S. App. D.C. 186, 86 F.3d 1180, 1183 (D.C. Cir. 1996)). "When the employee is able to produce sufficient evidence to establish that the employer failed to make a reasonably informed and considered decision before taking its adverse employment action, thereby making its decisional process 'unworthy of credence,' then any reliance placed by the employer in such a process cannot be said to be honestly held." 155 F.3d at 807-08.

Here, the general counsel, the superintendent; and the foreman had before them facts that indicated Kurincic did not intend to steal from the company and they had no evidence that he had wrongfully taken company money. While the mechanic's report suggested Kurincic was attempting to get paid for attending the meeting, his timecard, and the testimony of Konopka and Rogers discussed above, supported a contrary conclusion. Kurincic produced evidence that Stein [*27] should have known the theft allegation to be unfounded. Whether the proffered reason was the true one or a pretext requires the decision of a fact finder.

The court today holds that all jurors would have to conclude Stein believed Kurincic intended to be paid for the meeting without attending it, *supra* p. 8, even though Kurincic denied this to Konopka and offered an innocent explanation for signing the meeting sheet and mechanic's report. (An innocent explanation, moreover, that was not inconsistent with the objective evidence before Stein when it fired Kurincic.) The court holds that Kurincic's innocent explanation was of no legal effect because he initially told Konopka he attended the meeting and only after Konopka contradicted this, did Kurincic say he left early because he got sick. This holding is just a credibility judgment about Stein's credibility judgment, and neither the district court nor we should be making such assessments on summary judgment.

I believe this is an important point because the "honest belief" rule, if not applied with punctilious care for preserving issues of fact, can make a serious incursion into plaintiffs' ability to prove discrimination circumstantially. [*28] The rule is properly applied where there is no question of fact about what an employer reasonably concluded on the facts before it at the time of decision, even though the facts later appear to be incomplete or wrong. If, for instance, during Stein's investigation, Kurincic had admitted intent to steal or made no

explanation or even stuck to a story that was undeniably false, Stein would be entitled to summary judgment even if Kurincic later explained his actions. But in this case, Kurincic articulated an innocent explanation before Stein made its decision: he came to the meeting but got sick. Whether Stein believed this or not is a question of fact, not of law.

Perhaps Stein had other reasons for Kurincic's discharge, but theft was the reason given. I would reverse and remand for trial by a fact finder on this issue.

**Viewing:10 of 27 Results**

Previous | Next
Return to Search Results ▸ ▸
Compose a New Search ▸ ▸
Back to Top ▸ ▸

SEARCH lexisONE Site ▾ | GO



Customer Support    Site Map    LawCommerce.com

www.lexisnexis.com    Terms & Conditions    Privacy

© 2003 LexisNexis, a division of Reed Elsevier Inc. All rig



| CHARGE OF DISCRIMINATION | AGENCY | CHARGE NUMBER |
|---|---|---|
| this form is affected by the Privacy Act of 1974; See Privacy Act Statement before completing this form | EEOC | 221A10658 |

and EEOC

_State or local Agency, if any_

| NAME | HOME TELEPHONE |
|---|---|
| Scott, Donna | 513-398-6306 |
| STREET ADDRESS | CITY, STATE, AND ZIP CODE | DATE OF BIRTH |
| 4920 Bordeaux Lane | Mason , OH  45040 | 8/21/47 |

NAMED IS THE EMPLOYER, LABOR ORGANIZATION, EMPLOYMENT AGENCY APPRENTICESHIP COMMITTEE, STATE OR LOCAL GOVERNMENT AGENCY WHO DISCRIMINATED AGAINST ME (If more than one list below.)

| NAME | NUMBER OF EMPLOYEES, MEMBERS | TELEPHONE |
|---|---|---|
| Union Central Life Insurance | 800+ | 595-2200 |
| STREET ADDRESS | CITY, STATE, AND ZIP CODE | COUNTY |
| 1876 Waycross Road | Cincinnati , OH  45240 | Hamilton |
| NAME | | TELEPHONE |
| STREET ADDRESS | CITY, STATE, AND ZIP CODE | COUNTY |

CAUSE OF DISCRIMINATION BASED ON

[ ] RACE   [ ] COLOR   [✓] SEX   [ ] RELIGION   [ ] NATIONAL ORIGIN
[✓] RETALIATION   [✓] AGE   [ ] DISABILITY   [ ] OTHER (Specify)

DATE DISCRIMINATION TOOK PLACE
EARLIEST (ADEA/EPA)    LATEST (ALL)
4/17/01
[ ] CONTINUING ACTION

THE PARTICULARS ARE   (If additional space is needed, attach extra sheet(s):)

I. I am a 53 year old female. I worked for Union Central Life Insurance Company (the "Company") in 1986 and again from February 1, 1988 until my termination on April 17, 2001. I held the position of Licensed Variable Annuity Representative, and I was fully qualified for that position. I reported directly to Becky Deppen, Annuities Manager, at the time of my termination.

II. I experienced disparate treatment by Becky Deppen during the entire time that I reported to her, and I complained about the treatment. My complaints were based on being treated less favorably than other younger and/or male similarly situated employees. At one point, Ms. Deppen stated that I was "getting older and tired and need a rest from the representative job." To escape the harassing environment, I applied for a position in the contact center and believed that the person who interviewed me was extremely interested in hiring me. I believed Ms. Deppen sabotaged my chances of receiving the position. Approximately one month later, on April 17, 2001, I was terminated from my employment. I believe my termination was directly related to my age and/or gender and/or in retaliation because of my complaints of age and gender discrimination.

III. I believe I have been discriminated against because of my age in violation of the Age Discrimination in Employment Act (ADEA). I believe I have been discriminated against because of my gender in violation of Title VII of the Civil Rights Act, as amended. I believe I have been retaliated against because I complained about age and gender discrimination.

I also want this charge filed with the EEOC. I will advise the agencies if I change my address or telephone number and I will cooperate fully with them in the processing of my charge in accordance with their procedures.

NOTARY

I swear or affirm that I have read the above charge and that it is true to the best of my knowledge, information and belief.

I declare under penalty of perjury that the foregoing is true and correct.

SIGNATURE OF COMPLAINANT

_Donna M. Scott_

SUBSCRIBED AND SWORN TO BEFORE ME THIS DATE
(Day, month, and year)

Date 6/19/01

_Donna M. Scott_
Charging Party (Signature)

**EXHIBIT**
I

**DEFENDANT'S EXHIBIT**
3
LSM  1/5/02

Source: Legal > Cases - U.S. > All Courts - By Circuit > **6th Circuit - Federal & State Cases, Combined** ⓘ
Terms: **retaliation and causal w/3 connection w/150 day or month or year or date or time or period** (Edit Search)

✦Select for FOCUS™ or Delivery
⌐

*52 Fed. Appx. 655, \*; 2002 U.S. App. LEXIS 24216, \*\**

MARSHA D. DOTSON, Plaintiff-Appellant, v. NORFOLK SOUTHERN RAILWAY COMPANY, and
NORFOLK SOUTHERN CORPORATION, Defendants-Appellees.

No. 01-1581

UNITED STATES COURT OF APPEALS FOR THE SIXTH CIRCUIT

52 Fed. Appx. 655; 2002 U.S. App. LEXIS 24216

November 22, 2002, Filed

**NOTICE: [\*\*1]** NOT RECOMMENDED FOR FULL-TEXT PUBLICATION. SIXTH CIRCUIT RULE
28(g) LIMITS CITATION TO SPECIFIC SITUATIONS. PLEASE SEE RULE 28(g) BEFORE CITING
IN A PROCEEDING IN A COURT IN THE SIXTH CIRCUIT. IF CITED, A COPY MUST BE SERVED
ON OTHER PARTIES AND THE COURT. THIS NOTICE IS TO BE PROMINENTLY DISPLAYED IF
THIS DECISION IS REPRODUCED.

**PRIOR HISTORY:** ON APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF MICHIGAN. 99-73040. Borman. 04-13-01.

**DISPOSITION:** AFFIRMED.

### CASE SUMMARY

**PROCEDURAL POSTURE:** Appellant, an African-American female employee, challenged
the United States District Court for the Eastern District of Michigan's grant of summary
judgment to appellees railway companies on the employee's claims under Title VII of the
Civil Rights Act of 1964, 42 U.S.C.S. § 2000e et seq. The employee also appealed from
the determination that her disparate treatment claim was preempted by the Railway
Labor Act, 45 U.S.C.S. § 151-188.

**OVERVIEW:** The employee applied for and was denied transfers to positions advertised
as vacant by the employer. The employee asserted that she was otherwise qualified for
those positions and was denied the positions based on her race. The employee also
asserted that she was subjected to disparate discipline, name calling, and other forms of
racial harassment. On appeal from the district court's grant of summary judgment to the
railway companies, the appellate court found that where resolution of a state law claim
required interpretation of a collective bargaining agreement (CBA), such claims were
preempted by the Railway Labor Act (RLA), 45 U.S.C.S. § 151-188. The employee's
disparate treatment claim was a minor dispute because it depended upon an
interpretation of the CBA regulations regarding discipline and it was thus preempted by
the RLA. The alleged conduct was not severe or pervasive enough to alter the conditions
of the employee's employment and the district court properly granted summary
judgment to the railway companies on the hostile work environment claim. With regard
to the **retaliation** claim, the employee failed to link any protected activity to any
discriminatory conduct.

**EXHIBIT**

J

**OUTCOME:** The district court's grant of summary judgment to the railway companies on all claims was affirmed.

**CORE TERMS:** summary judgment, hostile work environment, retaliation, harassment, disparate treatment, severe, offensive, preempted, reasons stated, outrageous, pervasive, hostile, collective bargaining agreement, protected activity, preemption issue, railway, abusive, gross negligence, work environment, discipline, prevail, Railway Labor Act, exclusive jurisdiction, race discrimination, reasonable person, causal connection, prima facie case, matter of law, moving party, subjectively

### LexisNexis (TM) HEADNOTES - Core Concepts - ♦ Hide Concepts

Civil Procedure > Appeals > Standards of Review > De Novo Review
*HN1* ↓ An appellate court reviews de novo a district court's order granting summary judgment. More Like This Headnote

Civil Procedure > Summary Judgment > Burdens of Production & Proof
Civil Procedure > Summary Judgment > Summary Judgment Standard
*HN2* ↓ Summary judgment is proper only where there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56 (c). The court must consider the pleadings, depositions, answers to interrogatories, admissions on file, and affidavits in the light most favorable to the non-moving party. However, the party opposing the motion may not rely solely on the pleadings and must adduce more than a mere scintilla of evidence. If the nonmoving party fails to make a sufficient showing on an essential element of the case with respect to which the nonmovant has the burden, the moving party is entitled to summary judgment as a matter of law. More Like This Headnote

Labor & Employment Law > Discrimination > Racial Discrimination > Other Laws
Labor & Employment Law > Discrimination > Title VII
*HN3* ↓ Michigan's Elliott-Larsen Civil Rights Act (ELCRA), Mich. Comp. Laws § 37.2101 et seq. provides in part that it shall be unlawful for an employer to discriminate against an employee because of religion, race, color, national origin, age, sex, height, weight, familial status, or marital status. Mich. Comp. Laws § 37.2102(1). Claims of race discrimination brought under the ELCRA are analyzed under the same standards as claims of race discrimination brought under Title VII of the Civil Rights Act of 1964, 42 U.S.C.S. § 2000e et seq. More Like This Headnote

Civil Procedure > Pleading & Practice > Defenses, Objections & Demurrers > Waiver & Preservation
*HN4* ↓ Subject matter jurisdiction may be raised at any time under Fed. R. Civ. P. 12(h) (3). More Like This Headnote

Transportation Law > Rail Transportation >
Labor & Employment Law > Collective Bargaining & Labor Relations > Federal Preemption
*HN5* ↓ Where resolution of a state law claim requires interpretation of a collective bargaining agreement (CBA), such claims are preempted by the Railway Labor Act (RLA), 45 U.S.C.S. § 151-188. Under the RLA, disputes are separated into two distinct categories: major disputes and minor disputes." Where a claim is resolved by interpreting the terms of the CBA, it is a minor dispute. Where the dispute concerns rights that do not already exist under the collective bargaining agreement, but rather constitutes an attempt to create new rights, it is a major dispute. More Like This Headnote

Labor & Employment Law > Collective Bargaining & Labor Relations >

*HN6* ⚓ The Railway Labor Act (RLA), 45 U.S.C.S. § 151-188 requires that minor disputes be submitted through the grievance procedures described in the collective bargaining agreement. If the parties cannot resolve minor disputes on their own, they are submitted to the National Railroad Adjustment Board for final resolution. 45 U.S.C.S. § 153, First (i) & (m). The Board has exclusive jurisdiction over minor disputes, and a party cannot bypass the Board and take the dispute into federal court, except to enforce the Board's award.  More Like This Headnote

Labor & Employment Law > Discrimination > Racial Discrimination > Coverage & Definitions 🔍
Labor & Employment Law > Discrimination > Title VII 🔍
*HN7* ⚓ Title VII of the Civil Rights Act of 1964 (Title VII), 42 U.S.C.S. § 2000e et seq., prohibits racial harassment that creates a hostile or abusive work environment. In order to establish a prima facie case of hostile work environment based on race under Title VII, a plaintiff must show: (1) that he is a member of a protected class; (2) that he was subjected to unwelcome racial harassment; (3) that the harassment was based on race; (4) that the harassment had the effect of unreasonably interfering with his work performance by creating an intimidating, hostile, or offensive work environment; and (5) the existence of employer liability. The work environment must be both objectively and subjectively offensive.  More Like This Headnote

Labor & Employment Law > Discrimination > Racial Discrimination > Coverage & Definitions 🔍
Labor & Employment Law > Discrimination > Title VII 🔍
*HN8* ⚓ To establish a prima facie case of hostile work environment based on race under Title VII of the Civil Rights Act of 1964, 42 U.S.C.S. § 2000e et seq., a plaintiff is required to demonstrate that the alleged conduct was so severe or pervasive enough to create an environment that a reasonable person would find hostile or abusive, and that she subjectively regarded that environment as abusive.  More Like This Headnote

Labor & Employment Law > Discrimination > Retaliation 🔍
*HN9* ⚓ A party alleging **retaliation** under Title VII of the Civil Rights Act of 1964, 42 U.S.C.S. § 2000e et seq., must establish: (1) he engaged in activity protected by Title VII; (2) that exercise of protected rights was known to defendant; (3) defendant thereafter took adverse employment action; and (4) there was a causal connection between the protected activity and the adverse employment action.. On the causal connection requirement, there must be evidence sufficient to raise an inference that the protected activity was the likely motivation for the adverse action. Section 37.2701(a) of Michigan's Elliott-Larsen Civil Rights Act (ELCRA), Mich. Comp. Laws § 37.2101 et seq., specifically requires the plaintiff to demonstrate that: (1) he opposed violations of the ELCRA or participated in an activity protected by the ELCRA; and (2) his opposition or participation was a "significant factor" in the adverse employment action.  More Like This Headnote

Torts > Intentional Torts > Intentional Infliction of Emotional Distress 🔍
*HN10* ⚓ To prevail on a claim of intentional infliction of emotional distress, a plaintiff must establish: (1) extreme and outrageous conduct; (2) intent or recklessness; (3) causation; and (4) severe emotional distress. Liability for such a claim has been found only where the conduct complained of has been so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency and to be regarded as atrocious and utterly intolerable in a civilized community. It has been said that the case is generally one in which the recitation of facts to an average member of the community would arouse resentment against the actor, and lead the average member of the community to exclaim "Outrageous!" Liability

does not extend to mere insults, indignities, threats, annoyances, petty oppressions, or other trivialities. More Like This Headnote

**COUNSEL:** For MARSHA D. DOTSON, Plaintiff-Appellant: Clayton V. Johnson, Detroit, MI.

For NORFOLK SOUTHERN RAILWAY COMPANY, NORFOLK SOUTHERN CORPORATION, Defendants-Appellees: Robert Brower, Diane L. Akers, Carson C. Grunewald, Ursula A. Petrozzi, Bodman, Longley & Dahling, Detroit, MI.

**JUDGES:** Before: KEITH and DAUGHTREY, Circuit Judges, and KATZ, District Judge. *

* The Honorable David A. Katz, United States District Judge for the Northern District of Ohio, sitting by designation.

**OPINION:** **[*656]** PER CURIAM. Plaintiff-Appellant Marsha D. Dotson appeals from the district court's grant of summary judgment to Defendants-Appellees Norfolk Southern Railway Company ("railway company") and Norfolk Southern Corporation (collectively **[**2]** "Norfolk"). Dotson also appeals from the district court's determination that her disparate treatment claim in Count I is preempted by the Railway Labor Act ("RLA"), 45 U.S.C. § 151-188. For the reasons stated herein, we find no error and affirm.

## I. BACKGROUND

Dotson is an African-American female and was employed with the railway company as a clerk. She was last employed with the railway company in September 1999. During the period May 1997 to August 1999, Dotson applied for and was denied a transfer to a stenographer and other positions advertised as vacant by the employer. Dotson asserts that she was otherwise qualified for these positions and was denied the positions based on her race. Dotson also asserts that during the course of her employment she was subjected to disparate discipline, name calling, and other forms of racial harassment. Dotson's specific allegations are more fully discussed herein within the context of each individual claim.

Plaintiff filed suit in state court in the Wayne County Circuit Court on June 16, **[*657]** 1999 alleging disparate treatment, hostile work environment, and **retaliation** in violation of Michigan's Elliott-Larsen Civil **[**3]** Rights Act ("ELCRA"), MICH. COMP. LAWS § 37.2101 et seq. Dotson also asserts claims of gross negligence and intentional infliction of emotional distress. Norfolk removed the action based on diversity jurisdiction and subsequently filed a motion for summary judgment. The district court conducted a hearing on Norfolk's motion on February 28, 2001 and issued an order on April 12, 2001 granting Norfolk's motion as to all claims. Dotson timely filed a notice of appeal on April 26, 2001.

## II. DISCUSSION

### A. Standard of Review

HN1 The Court reviews de novo a district court's order granting summary judgment. *See Thompson v. Ashe,* 250 F.3d 399, 405 (6th Cir. 2001). HN2 Summary judgment is proper only where there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. *Id.;* FED. R. CIV. P. 56(c). The Court must consider the pleadings, depositions, answers to interrogatories, admissions on file, and affidavits in the light most favorable to the non-moving party. *Celotex Corp. v. Catrett,* 477 U.S. 317, 323, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986); *Thompson,* 250 F.3d at 405. "However, the **[**4]** party opposing the motion may not rely solely on the pleadings and must adduce more than a mere scintilla of evidence; if the nonmoving party fails to make a sufficient

showing on an essential element of the case with respect to which the nonmovant has the burden, the moving party is entitled to summary judgment as a matter of law." *Thompson,* 250 F.3d at 405.

### B. Count I-ELCRA Claims

Pursuant to the ELCRA, Dotson asserts claims for disparate treatment, hostile work environment, and **retaliation.** [HN3]The act provides in part that it shall be unlawful for an employer to discriminate against an employee because of religion, race, color, national origin, age, sex, height, weight, familial status, or marital status. MICH. COMP. LAWS § 37.2102(1). Claims of race discrimination brought under the ELCRA are analyzed under the same standards as claims of race discrimination brought under Title VII of the Civil Rights Act of 1964 ("Title VII"). *See Jackson v. Quanex Corp.,* 191 F.3d 647, 658 (6th Cir. 1999).

For the first time in its motion for summary judgment, Norfolk raised a preemption issue based upon the provisions of the Railway Labor Act ("RLA"), **[**5]** 45 U.S.C. § 151-188. n1 Norfolk asserted that Dotson's claims, at least in part, were preempted because of the existence of a collective bargaining agreement ("CBA").

- - - - - - - - - - - - - - Footnotes - - - - - - - - - - - - - - - -

n1 On appeal, Dotson complains that Norfolk did not raise the preemption issue in its responsive pleadings. In the instant action, the preemption issue goes to subject matter jurisdiction. [HN4]Subject matter jurisdiction may be raised at any time. *See* FED. R. CIV. P. 12(h)(3).

- - - - - - - - - - - - End Footnotes- - - - - - - - - - - - - -

[HN5]Where resolution of a state law claim requires interpretation of a CBA, such claims are preempted by the RLA. "Under the RLA, disputes are separated into two distinct categories: major disputes and minor disputes." *Airline Prof'ls Ass'n of the Int'l Bhd. of Teamsters v. ABX Air, Inc.,* 274 F.3d 1023, 1027-28 (6th Cir. 2001). Where a claim is resolved by interpreting the terms of the CBA, it is a minor dispute. *See id.* at 1028. "Where the dispute concerns rights that do not already exist under the collective bargaining **[**6]** agreement, but rather constitutes an attempt to create new rights, it is a major dispute." *Id.*

[HN6]The RLA requires that minor disputes be submitted through the grievance procedures described in the CBA. *See Andrews* **[*658]** *v. Louisville & N. R. Co.,* 406 U.S. 320, 322, 32 L. Ed. 2d 95, 92 S. Ct. 1562 (1972) (grievance procedures of the collective bargaining agreement are the mandatory and exclusive means of settling minor disputes). "If the parties cannot resolve minor disputes on their own, they are submitted to the National Railroad Adjustment Board for final resolution. 45 U.S.C. § 153, First (i) & (m). The Board has exclusive jurisdiction over minor disputes, and a party cannot bypass the Board and take the dispute into federal court, except to enforce the Board's award." *CSX Transp., Inc. v. Marquar,* 980 F.2d 359, 361 (6th Cir. 1992); *Airline Prof'ls,* 274 F.3d at 1028 ("the adjustment board exercises exclusive jurisdiction over minor disputes").

### 1. Disparate Treatment

In the instant action, the district court determined that the disparate treatment claim was a "minor" dispute and thus preempted by the **[**7]** RLA. The district concluded that the disparate treatment claim was preempted because:

Whether or not Plaintiff was disciplined more harshly [than other employees] or ... should have been disciplined at all, depends upon an interpretation of the CBA regulations regarding discipline. In addition, whether or not Plaintiff should have been allowed to sit at the front desk, depends on the CBA provisions regarding seniority and regarding who could "fill in" there when needed. Lastly, whether or not Plaintiff was entitled to a position as a clerk stenographer depends on the CBA requirements regarding typing tests and qualification. In other words, in order to dispose of Plaintiff's claims, the Court will need to look at more than just Defendants' motives.

J.A. 115.

For the reasons stated by the district court in its summary judgment ruling, we affirm this finding.

### 2. Hostile Work Environment

Dotson's harassment claim is self styled as a hostile work environment claim.

HN7 Title VII prohibits racial harassment that creates a hostile or abusive work environment. See Hafford v. Seidner, 183 F.3d 506, 512 (6th Cir. 1999). In order to establish [**8] a prima facie case of hostile work environment based on race under Title VII, a plaintiff must show: 1) that he is a member of a protected class; 2) that he was subjected to unwelcome racial harassment; 3) that the harassment was based on race; 4) that the harassment had the effect of unreasonably interfering with his work performance by creating an intimidating, hostile, or offensive work environment; and 5) the existence of employer liability. See id. *** The work environment must be both objectively and subjectively offensive. See Harris v. Forklift Sys., 510 U.S. 17, 21-22, 126 L. Ed. 2d 295, 114 S. Ct. 367.

Newman v. Fed. Express Corp., 266 F.3d 401, 405 (6th Cir. 2001).

In support of the hostile work environment claim, Dotson alleges:

1. A coworker, Harold Lyons, persistently used the initials "KKK" instead of his own initials on work documents;" n2

2. On July 11, 1998 a coworker used the word "ungawa," interpreted by Dotson as a derogatory racial term;

[*659] 3. Other employees called her names such as "tar baby" and treated her harshly; and

4. Management continued to use a janitorial service that employed a worker who allegedly harassed Dotson by mopping over Dotson's [**9] feet and bumping into her.



- - - - - - - - - - - - - - Footnotes - - - - - - - - - - - - - - - -

n2 Lyons testified that he used these initials because he could not type efficiently and used only one or two fingers to type.

- - - - - - - - - - - - End Footnotes- - - - - - - - - - - - - -

In addition, certain incidents alleged in support of her other discrimination claims might support a hostile work environment charge, such as disparate discipline, not being allowed to sit at the front desk, and failure to promote based on race.

As noted by the district court, it is difficult to attribute racial motives to use of "ungawa." The term was used, allegedly by the speaker as in the Tarzan movies, as a salutation. In addition, when management was made aware of Dotson's complaint regarding Lyon's use of "KKK," the conduct ceased. Most notably, Dotson's allegations of name calling are supported in only very general terms, and she does not recount when or how often the incidents occurred, nor who made the disparaging remarks.

*HN8*To establish a prima facie case, Dotson is required to demonstrate that the alleged conduct was so "severe or pervasive **[**10]** enough to create an environment that a reasonable person would find hostile or abusive," and that she subjectively regarded that environment as abusive. Black v. Zaring Homes, Inc., 104 F.3d 822, 826 (6th Cir. 1997). Title VII is not a general civilty code, see Oncale v. Sundowner Offshore Servs., 523 U.S. 75, 140 L. Ed. 2d 201, 118 S. Ct. 998 (1998), and the conduct alleged by Dotson does not rise to the type regarded by this Circuit as severe or hostile. See, e.g., Bowman v. Shawnee State Univ., 220 F.3d 456 (6th Cir. 2000) (three incidents, though "not merely crude, offensive, and humiliating, but also containing an element of physical invasion" not sufficient to meet severe or pervasive standard); Burnett v. Tyco Corp., 203 F.3d 980, 985 (6th Cir. 2000) (holding that "under the totality of the circumstances, a single battery coupled with two merely offensive remarks over a six-month period does not create an issue of material fact as to whether the conduct alleged was sufficiently severe to create a hostile work environment); Morris v. Oldham County Fiscal Court, 201 F.3d 784, 790 (6th Cir. 2000) (holding **[**11]** that simple teasing, offhand comments, and isolated incidents including a sexual advance did not amount to discriminatory changes in the terms and conditions of a plaintiff's employment); Williams v. GMC, 187 F.3d 553 (6th Cir. 1999) (severe or pervasive standard met by fifteen incidents within one **year** including derogatory and profane remarks directed at the plaintiff, sexually explicit comments directed at the plaintiff, offensive comments directed at women in general, denial of plaintiff's overtime, and the exclusion of plaintiff from certain workplace areas).

For the reasons stated in the district court's well-reasoned opinion, the alleged conduct was not severe or pervasive enough to alter the conditions of Dotson's employment and the district court properly granted summary judgment to Defendants on this claim.

### 3. Retaliation

*HN9*A party alleging **retaliation** under Title VII must establish: "(1) he engaged in activity protected by Title VII; (2) this exercise of protected rights was known to defendant; (3) defendant thereafter took adverse employment action; and (4) there was a **causal connection** between the protected activity and the adverse employment **[**12]** action." Hafford v. Seidner, 183 F.3d 506, 515 (6th Cir. 1999). On the **causal connection** requirement, there must be evidence sufficient to raise an inference that the protected activity was the likely **[*660]** motivation for the adverse action. E.E.O.C. v. Avery Dennison Corp., 104 F.3d 858, 861 (6th Cir. 1997). The ELCRA, § 37.2701(a), specifically

requires the plaintiff to demonstrate that "(1) he opposed violations of the Act or participated in an activity protected by the Act and (2) his opposition or participation was a "significant factor" in the adverse employment action." *Moore v. Kuka Welding Sys.*, 171 F.3d 1073, 1080 (6th Cir. 1999).

Dotson submits that the district court erred in determining that Dotson failed to establish she "was discriminated against, harassed and/ or retaliated against." However, beyond the generalized **retaliation** assertion contained in various descriptive headings in her brief, Dotson offers no substantive arguments as to the continued viability of a **retaliation** claim and fails to link any protected activity to any discriminatory conduct. Therefore, we affirm the district court's grant of summary judgment **[**13]** to Defendants on this claim.

## C. Count II-Gross Negligence

Notwithstanding the parties' dispute over whether Michigan recognizes the tort of gross negligence, the district court concluded that Plaintiff failed to establish a claim for even simple negligence and thus could not prevail on a claim for gross negligence. For the reasons stated by the district court in its summary judgment ruling, we agree that Dotson has not established the breach of any duty attributable to Defendants. Therefore, we affirm the district court's grant of summary judgment on this claim.

## D. Count III-Intentional Infliction of Emotional Distress

*HN10* To prevail on this count, Dotson must establish "(1) extreme and outrageous conduct, (2) intent or recklessness, (3) causation, and (4) severe emotional distress." *Teadt v. St. John's Evangelical Church,* 603 N.W.2d 816, 823, 237 Mich. App. 567 (Mich. Ct. App. 1999).

> Liability for such a claim has been found only where the conduct complained of has been so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency and to be regarded as atrocious and utterly intolerable in a **[**14]** civilized community. It has been said that the case is generally one in which the recitation of facts to an average member of the community would arouse resentment against the actor, and lead the average member of the community to exclaim "Outrageous!"

*Id.* at 823-24 (internal citation omitted). "Liability does not extend to mere insults, indignities, threats, annoyances, petty oppressions, or other trivialities." *Doe v. Mills,* 536 N.W.2d 824, 833, 212 Mich. App. 73 (Mich. Ct. App. 1995).

In support of this claim Dotson asserts that "the conduct of the employees of the defendant employer was so outrageous in character so as to offend a reasonable person." J.A. 28. She specifically cites "use of KKK at work" and exposure "to constant hatred of Blacks." J.A. 29. Count III also incorporates by reference preceding paragraphs. In Count II, Dotson alleges that Norfolk "participated in and/ or condoned discrimination, harassment and/ or **retaliation** toward Plaintiff." J.A. 20.

The use of KKK, if intended as a racial statement, is deplorable, but in the instant action does not rise to the level of "extreme and outrageous" conduct. With respect to the **[**15]** "constant hatred of Blacks," Dotson does not direct the Court to any evidence to support this contention. On appeal, she asserts that this claim is adequately alleged in the complaint, but to prevail on summary judgment Dotson must go beyond the pleadings and direct **[*661]** the Court to evidence in support of her claims. Even when looking at the sum of all the allegations made, Dotson is unable to establish that any employee's conduct meets the

relevant standard. She therefore cannot impute vicarious liability to Norfolk for its employees' conduct. *See Treadt,* 603 N.W.2d at 824. Therefore, the Court affirm's the district court's grant of summary judgment to Norfolk on Count III.

## III. CONCLUSION

For the foregoing reasons, we AFFIRM the district court's grant of summary judgment to Defendants on all claims.

Source: Legal > Cases - U.S. > All Courts - By Circuit > **6th Circuit - Federal & State Cases, Combined** [i]
Terms: **retaliation and causal w/3 connection w/150 day or month or year or date or time or period** (Edit Search)
View: Full
Date/Time: Thursday, August 28, 2003 - 3:39 PM EDT

* Signal Legend:
● - Warning: Negative treatment is indicated
▲ - Caution: Possible negative treatment
◆ - Positive treatment is indicated
Ⓐ - Citing Refs. With Analysis Available
❶ - Citation information available
* Click on any *Shepard's* signal to *Shepardize®* that case.

About LexisNexis | Terms and Conditions

Copyright © 2003 LexisNexis, a division of Reed Elsevier Inc. All rights reserved.