UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | | |
|---|---|---|
| DONNA SCOTT, | : | Civil Action No. C-1-02-075 |
| Plaintiff, | : | |
| | : | |
| | : | Judge Weber |
| v. | : | Magistrate Judge Hogan |
| | : | |
| THE UNION CENTRAL LIFE | : | |
| INSURANCE COMPANY, | : | |
| | : | |
| Defendant | : | |

## JOINT FINAL PRETRIAL ORDER

This matter is before the Court pursuant to Fed. R. Civ. P. 16.

I.  APPEARANCES

For Plaintiff:   Randolph H. Freking
                 George M. Reul, Jr.

For Defendant:   Deborah DeLong
                 Michael J. Newman

II.  NATURE OF ACTION AND JURISDICTION

A.  This is an action for retaliation and discrimination based upon gender and age under Title VII of the Civil Rights Act of 1964, as amended, the Age Discrimination in Employment Act (ADEA), Ohio Revised Code §4112, et seq., and Ohio Public Policy. Plaintiff also has claim for violation of the Equal Pay Act, 29 U.S.C. §206 and unequal pay under Ohio Revised Code §4112.02. The jurisdiction of the Court is invoked under Title 28, United States Code 1331.

B.  The jurisdiction of the Court is not disputed.

III.  TRIAL INFORMATION

A.  The estimated length of trial is five (5) days.

B.  Trial to a jury will begin on the August trial calendar (on a date to be determined by the Court).

IV.     STATEMENT OF THE CASE

A.      Plaintiff

Plaintiff Donna Scott (Plaintiff or Ms. Scott) has asserted claims that Defendant Union Central Life Insurance Company (Defendant or Union Central) retaliated and discriminated against her when the company terminated her employment on April 17, 2001. Despite having many consecutive years of satisfactory or better performance reviews since 1985, Defendant terminated Plaintiff a little more than two months after she engaged in protected activity by complaining to Human Resources that her supervisor had discriminated against her on the basis of her gender and age. Defendant claimed that Plaintiff was terminated for alleged dishonesty, including her allegations of discrimination against her supervisor, and alleged poor performance. However, Defendant had already addressed and disciplined her for all the issues it now claimed warranted her termination. The only intervening event was her protected activity.

Plaintiff also alleges that she was terminated because of her gender and age. Younger men doing the same job consistently received better treatment and better pay than Plaintiff and other older females in the same department. Along with her claims of retaliatory and discriminatory discharge, Plaintiff asserts that she was paid less than one or men for doing substantially similar work in violation of the Equal Pay Act.

B.      Defendant

Defendant incorporates the Statement of Facts set forth in its Motion for Summary Judgment and Summary Judgment Reply Memorandum.

The evidence clearly and overwhelming indicates that Plaintiff was not terminated because of her sex or age in violation of federal or state law; she was not retaliated against in violation of federal or state law; she was not paid a lesser amount of pay as compared to similarly situated male employees, in violation of federal or state law; and she was not terminated in violation of Ohio public policy. Plaintiff was terminated because of an ongoing and repeated pattern of lying and being untruthful to Union Central management, and because of her poor job performance.

V.      TRIAL DETERMINATIONS

A.      FACTS

1.      Stipulated Facts

        The parties stipulate as to the following facts:

(a)             Plaintiff was born August 21, 1947.

(b)          Plaintiff was hired by Defendant as a Policy Typist and Exchange Clerk in 1985.

(c)          In 1993, Plaintiff was transferred to Union Central's Annuities Department, where she worked as an Annuity Client Service Representative (a "CSR").

(d)          On February 5, 2001, Defendant issued Plaintiff a "for the record" written warning.

(e)          Defendant discharged Plaintiff on April 17, 2001.

2.          Disputed Facts

The parties dispute the following facts:

(a)          Plaintiff:

(1)          Whether Defendant terminated Plaintiff's employment in retaliation for her engaging in protected activity under Title VII, the ADEA and Ohio Revised Code § 4112;

(2)          Whether Defendant violated Title VII and ORC §4112 by terminating Plaintiff's employment and/or treating her less favorably than other similarly-situated male employees because of gender;

(3)          Whether Defendant violated the ADEA and ORC §4112 when it terminated her employment and/or treated her less favorably than similarly-situated younger employees because of her age;

(4)          Whether Defendant was motivated, at least in part, to discharge Plaintiff because of her protected activity, her gender, and/or her age; and whether Defendant can establish that it was would have discharged her absent the impermissible motivating factor;

(5)          Whether Defendant violated the equal pay act and Ohio law by paying Plaintiff less than other male employees for equal work because of her gender; and

(6)          Whether Defendant violated the public policy of the State of Ohio by wrongfully discharging her from employment.

(b)          Defendant

Defendant respectfully suggests the undisputed facts of this matter are as follows:

(1)   Plaintiff, Donna Scott, began working for Defendant, Union Central, in 1985. (Plaintiff Dep., p. 106.) In 1993, Plaintiff was made a Client Service Representative ("CSR") in Union Central's Annuities Division. Plaintiff remained a CSR until the termination of her employment on April 17, 2001;

(2)   A CSR is a customer service position, which required Plaintiff to have a great deal of phone contact with Union Central's clients (i.e., their policy holders) around the country. Many of these clients were elderly, and they depended upon Plaintiff's assistance for the timely payment of their annuity checks;

(3)   Plaintiff was supervised by Rebecca ("Becky") Deppen. Ms. Deppen, in turn, reported to Richard Pretty, the Vice-President in charge of the Union Central Annuity Division;

(4)   During Plaintiff's employment, Ms. Deppen and Mr. Pretty received numerous complaints - from Plaintiff's co-workers and Union Central's clients - about Plaintiff's poor job performance. For example, Plaintiff failed to answer the telephone; she failed to take phone messages from clients (because her voice mail was frequently full); she refused to return client telephone calls; and she failed to fulfill her "team" duties, by filling in for other CSRs who were absent from work. Plaintiff's job performance was so poor, in fact, that Ms. Deppen received more complaints about Plaintiff than any of the other CSRs who reported to her. (Rebecca Deppen Dep., pp. 97-103, 115-117; Deppen Dep. Ex. 5; Richard Pretty Dep., pp. 50-53.) On at least one instance, Plaintiff's failure to satisfactorily perform her job caused Union Central to lose the business of a large client. (Deppen Dep., p. 110.);

(5)   Ms. Deppen advised Plaintiff of each of these issues. Plaintiff refused to accept responsibility for her poor job performance, and blamed other people for her problems. (Deppen Dep., pp. 115, 175.);

(6)   Rather than work to cure her employer's concerns, Plaintiff began repeatedly nominating herself for a "Key Award." Such awards are given by Union Central to recognize its CSRs who provide outstanding customer service. (Pretty Dep., pp. 59-63.) Plaintiff never won a Key Award;

(7)   Plaintiff's multiple Key Award nominations were each supported by a letter from one of the elderly clients she was supposed to be assisting. In November 2000, Union Central

determined, much to its surprise, that Plaintiff had solicited these letters herself. (Deppen Dep., pp. 75-76.) On one such letter, dated November 13, 2000, Plaintiff wrote to a client: "I have a favor to ask of you.... Would you mind writing a short memo stating that I am doing my job providing accurate information or processing your request in a timely and professional manner, etc." Knowing that her client contact was improper, Plaintiff ended the letter with the following: "P.S. Please throw this letter away - Thanks!" Plaintiff's November 13th letter contained a lie: In the letter, Plaintiff premised her request for positive client feedback upon the fact that "[n]ext month is my yearly review...." That was simply untrue. Plaintiff's yearly review was not scheduled for several months after her request for customer solicitation;

At the time Union Central discovered the existence of Plaintiff's letters to her customers, in late November 2000, she was on medical leave and absent from work. When Plaintiff returned from her leave, in February 2001, she was immediately disciplined and relieved of her duties as a CSR. (See February 5, 2001 Written Discipline Warning, captioned "For the Record".) Plaintiff was then advised, in writing, as follows: "[You have also] been sending letters to clients soliciting positive feedback. [You] claim[]...that comments made by a senior [Union Central] official led [you] to believe that this was an acceptable practice[;] it is not. The letters were deceptive and dishonest with respect to the timing of [your] performance evaluation.... The inappropriateness of the letters seems to have been recognized by [you] by virtue of [your] request for clients to dispose of [your] letter after receipt. The solicitation of feedback via letters to clients needs to cease immediately";

(8) In response to this written discipline, Plaintiff advised Mr. Pretty that: (1) she had been made the victim of "lies"; (2) she had been made to undergo "a continuing pattern of discriminatory harassment" by Ms. Deppen; and (3) she believed Ms. Deppen told her, on one occasion, that Plaintiff was "old and tired and needed a new job." (Deppen Dep., Ex. 5; Retherford Dep. pp. 14-150.) Although no facts supported these assertions, Mr. Pretty took Plaintiff's allegations very seriously, and undertook a formal investigation of Plaintiff's complaints. To ensure fairness and evenhandedness, Mr. Pretty did not involve Ms. Deppen or himself in the investigation, but asked that the investigation be conducted by Union Central's Human Resources Department. (Pretty Dep., pp. 75-76.) An H.R. representative, Connie Retherford,

undertook a thorough, independent investigation of each of Plaintiff's complaints, interviewed Ms. Deppen and Plaintiff's co-workers, and came to the conclusion that Plaintiff's allegations were totally without foundation or support. Retherford found that no Union Central employee had lied, or been asked to lie, with respect to Plaintiff; that, while an employee at Union Central, Plaintiff had not been the victim of any conduct which could remotely resemble discrimination (on the basis of sex, age, or otherwise) or harassment of any kind; that, while acting as Plaintiff's supervisor, Ms. Deppen had not engaged in any conduct which could be construed as discrimination or harassment; and, finally, that neither Ms. Deppen, nor anyone else at Union Central, had ever suggested to Plaintiff, or about Plaintiff, that she was "old" or "tired" or "needed a new job." (Retherford Dep., pp. 141-143, 172-175, 185-186, 254-255.) In other words, all of Plaintiff's allegations were found totally without merit;

(9) After carefully considering Ms. Retherford's report, Mr. Pretty concluded that Plaintiff had, once again, lied in the course of her Union Central employment. In light of this pattern of dishonesty and untruthfulness, and also on account of Plaintiff's serious on-the-job performance problems, Pretty then terminated Plaintiff's employment. (Pretty Dep., pp. 80-81.)

B. APPLICABLE PROPOSITIONS OF LAW

1. Agreed Applicable Propositions of Law

The following applicable propositions of law are agreed to by the parties:

(a) To prove a claim of retaliation, Plaintiff must demonstrate that (1) she engaged in protected activity; (2) the exercise of her civil rights was known by Defendant; (3) Defendant thereafter took adverse employment action; and (4) a causal connection exists between the protected activity and the adverse employment action.

(b) To establish a causal connection, Plaintiff must produce sufficient evidence from which an inference could be drawn that the adverse action would not have been taken had Plaintiff not engaged in protected activity. Evidence that Defendant treated the Plaintiff differently from similarly-situated employees or that the adverse action was taken shortly after the Plaintiff's exercise of protected rights is relevant to causation.

(c) Plaintiff may establish a prima facie case of gender or age discrimination through circumstantial evidence by showing that: 1) she is a member of the protected class; 2) she suffered an adverse employment action; 3) she was qualified for the position lost or not gained; and 4) her position was filled by someone outside of the protected class or by showing that she was treated less favorably than a similarly-situated employee outside of her protected class.

(d) The Plaintiff's burden at the prima facie stage of the proceedings is not onerous, but merely serves to raise a rebuttable presumption of discrimination by eliminating the most common nondiscriminatory reasons for the employer's treatment of the Plaintiff.

(e) Plaintiff may demonstrate pretext by showing 1) Defendant's reasons had no basis in fact; 2) the reasons did not actually motivate the adverse employment decision; or 3) the reasons were insufficient to warrant the decision made. The first type of showing consists of evidence that the reason offered for the Plaintiff's discharge never happened, and the reason is factually false. The third showing ordinarily consists of evidence that other employees, particularly those outside the protected class, were not discharged even though they engaged in conduct substantially identical to that which purportedly motivated the Plaintiff's discharge. If the Plaintiff establishes the first or third showing, a permissive inference of discrimination arises.

(f) Plaintiff may establish a prima facie case of pay discrimination by showing that Defendant paid employees of one sex less than employees of the opposite sex "for equal work on jobs the performance of which requires equal skill, effort, and responsibility, and which are performed under similar working conditions." Jobs need not be identical in order to constitute "equal work." Rather, it is only necessary that there exist "substantial equality of skill, effort, responsibility and working conditions.

(g) If Plaintiff establishes a prima facie case, the burden shifts to Defendant to show that the pay differential is justified under one of the four affirmative defenses set forth under the Act: "(1) a seniority system; (2) a merit system; (3) a system which measures earnings by quantity or quality of production; or (4) any other factor other than sex."

(h) The Ohio Supreme recognized the tort of wrongful discharge in violation of public policy. The tort requires four elements: (1) a clear public policy existed and was manifested in a state or federal constitution, statute or administrative regulation, or in the common law (the clarity element); (2) dismissing employees under

circumstances like those involved in the Plaintiff's dismissal would jeopardize the public policy (the jeopardy element); (3) the Plaintiff's dismissal was motivated by conduct related to the public policy (the causation element); and (4) the employer lacked overriding legitimate business justification of the dismissal (the overriding justification element).

2. Disputed Applicable Propositions of Law

The following applicable propositions of law are disputed by the parties:

(a) Plaintiff:

(1) To prevail on her retaliation claim, Plaintiff does not have to prove that Defendant actually engaged in unlawful gender or age discrimination. Plaintiff need only have a good faith belief that the claim is valid in order to be provided protection under Title VII and the ADEA. See, Booker v. Brown & Williamson, 879 F.2d 1304 (6th Cir. 1989).

(2) A Plaintiff's prima facie case combined with sufficient evidence to find that the employer's asserted justification lacks credibility will permit the trier of fact to infer that the employer was motivated by unlawful discrimination.

(3) While analyzing a prima facie case of discrimination, courts are not to use the Defendant's articulated nondiscriminatory reason for termination to assess whether the Plaintiff was qualified for the position. Wexler, 317 F.3d at 574; Cline, 206 F.3d at 660-61. This approach would impermissibly conflate the distinct stages of the McDonnell Douglas analysis, and set the prima facie burden too high. Instead courts must analyze the qualifications of the Plaintiff independent of the Defendant's nondiscriminatory reason for termination. Wexler, 317 F.3d at 574-75; Cline, 206 F.3d at 660-61. In other words, this Court must evaluate Plaintiff's qualifications and performance before the events that prompted her discharge. Cline, 206 F.3d at 662-63. Plaintiff's qualifications must be evaluated objectively, by determining whether she presented evidence that she met at least the minimum objective criteria required for employment in her field. Wexler, 317 F.3d at 575-76.

(4) The fact that Plaintiff performed her job successfully for a number of years is sufficient to establish that she qualified for the purposes of her prima facie case. See, Blackwell v. Sun Electric Corp., 696 F.2d 1176, 1180 (6th Cir. 1983); Heck v.

                Board of Trustees, Kenyon College, 12 F.Supp.2d 728 (S.D. Ohio 1998).

(b)           Defendant:

(1)           Union Central respectfully suggests to the Court that the caselaw it set forth in its Motion for Summary Judgment and Summary Judgment Reply Memorandum controls all of Plaintiff's claims pled in this case. Union Central incorporates that caselaw herein by reference.

C.     WITNESSES

Plaintiff's Witnesses: See Appendix A.

Defendant's Witnesses: See Appendix B.

D.     EXPERT WITNESSES

None.

E.     EXHIBITS

The parties will offer as exhibits documents that have been exchanged in the discovery process. By agreement, the parties will exchange exhibit lists and books and submit these to the Court in advance of the Final Pretrial conference.

F.     DEPOSITIONS, INTERROGATORIES AND ADMISSIONS

The deposition of Richard Pretty may be read into evidence. It is anticipated that no other evidence will be presented by deposition, videotape, interrogatories or admissions.

G.     DISCOVERY

Discovery has been completed.

H.     PENDING MOTIONS

There are no pending motions at this time.

VI.     SETTLEMENT EFFORTS

At the beginning of the discovery process, the parties discussed the possibility of mediation. Although the parties have talked in general terms about the issue of settlement, no settlement conference has been held to date.

**IT IS SO ORDERED.**

_____
Hon. Herman J. Weber
United States District Court Judge

_George Reul_ by authorization  Date: _July 6, 2004_
Counsel for Plaintiff
*Michael Newman per phone call on 7/6/04*

_Michael Newman_  Date: _July 6, 2004_
Counsel for Defendant

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | |
|---|---|
| DONNA SCOTT, <br>     Plaintiff, <br> v. <br> THE UNION CENTRAL LIFE INSURANCE COMPANY, <br>     Defendant. | Civil Action No. C-1-02-075 <br><br> Judge Weber <br> Magistrate Judge Hogan |

### APPENDIX B

Defendant's Trial Witnesses

Each of the following witnesses is expected to testify regarding their knowledge of Plaintiff's employment, Union Central's policies and procedures, and other matters discussed in the witness's deposition.

1. Plaintiff (as if on cross examination)

2. Richard Pretty

3. Rebecca Deppen

4. Connie Retherford

5. Dan Woodard

6. Edwin Ericson

7. Jeremy Whiting

8. Tom McCarthy

9. Jill Krebs

10. Donna Anderson

11. John Jacobs

12. Pat Jones

Defendant reserves the right to call, as if on cross examination, each of the witnesses listed by Plaintiff in this Final Pretrial Conference Order. Defendant also reserves to right to call each witness deposed in this case.