UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | | |
|---|---|---|
| DONNA SCOTT, | : | Civil Action No. C-1-02-075 |
| Plaintiff, | : | Judge Weber |
| v. | : | Magistrate Judge Hogan |
| | : | |
| THE UNION CENTRAL LIFE INSURANCE COMPANY, | : | **DEFENDANT'S MEMORANDUM IN OPPOSITION TO PLAINTIFF'S MOTION *IN LIMINE* REGARDING HER TWO PRIOR SHOPLIFTING CONVICTIONS** |
| Defendant. | : | |

On August 12, 2004, Plaintiff filed a motion *in limine* to bar evidence of her two prior shoplifting convictions (doc. 37). The two criminal convictions directly relate to Plaintiff's ability to obtain the "NASD Series 6" securities license needed to keep her job with Defendant Union Central as a client service representative ("CSR") in the Annuity Division.

Union Central does not seek to impeach Plaintiff with her two criminal convictions, and thus does not seek to admit the two convictions under Fed. R. Evid. 609, as Plaintiff contends.

On the contrary, evidence of Plaintiff's two shoplifting convictions is relevant for purposes of Fed. R. Evid. 401, and admissible as a "past crime, wrong or act" under Rule 404(b), because Plaintiff has repeatedly argued that she was subject to disparate treatment, relative to the Series 6 exam, vis-à-vis other, supposedly similarly situated male employees in Union Central's Annuity Division. The shoplifting evidence also satisfies Rules 401 and 404(b) because the trial evidence will show that Plaintiff advised Union Central's management about her concerns that she might not be able to obtain a Series 6 license -- concerns which arose because Plaintiff believed her shoplifting convictions might prevent her from obtaining Series 6 license.[1]

---

[1] This was a valid concern of Plaintiff's. Article III, Section 4 of the NASD Bylaws disqualify an individual from obtaining a Series 6 license who has committed "certain misdemeanor and all felony convictions."

Plaintiff, who placed the issue of her two convictions before the Court for its review, cannot now complain that such evidence must be barred from *voir dire* and consideration by the jury. Accordingly, Plaintiff's motion *in limine* should be denied.

Defendant's arguments are supported by the following Memorandum of Law.

## MEMORANDUM OF LAW

As Plaintiff admits in her motion *in limine*, she was convicted not once, but *twice* for shoplifting offenses - in 1987 and, again, in 1993. In her motion, Plaintiff argues, *inter alia,* that the two convictions cannot be used to attack her credibility under Fed. R. Evid. 609. This argument lacks merit because Union Central does not seek to impeach Plaintiff via Rule 609, and because prior criminal convictions are admissible under Rules 401 and 404(b) where, as here, they are relevant and will not prejudice or confuse the jury.

I.    **ARGUMENT**

A.    **Union Central Does Not Seek to Impeach Plaintiff With Her Past Criminal Convictions Via Rule 609**

Federal Rule of Evidence 609 limits the use of past criminal convictions as a means of impeachment. Plaintiff premises her motion upon Rule 609 on the belief that Union Central will seek to impeach her with her two criminal convictions. Because Union Central does not seek to so act, and will not impeach Plaintiff with her two convictions, Plaintiff's motion *in limine* lacks merit and should be denied.

B.    **The Facts Underlying Plaintiff's Taking of the Series 6 Exam Are Relevant to Plaintiff's Discrimination Claims and Union Central's Conduct Undertaken on Plaintiff's Behalf, and It Would be Inequitable for the Court to Bar Union Central from Discussing Those Facts at Trial**

As the discovery in this case proved, Plaintiff was employed by Union Central as a CSR in the Annuities Department, where she had daily telephone contact with Union Central's

customers (*i.e.*, their insureds). In order to guarantee that reliable advice was being given by the CSRs in the Annuity Department to its customers, Union Central required each of its CSRs in the Department to take and pass what is known as a "NASD Series 6" examination and to obtain a Series 6 securities license.

Plaintiff's summary judgment motion was premised to a large extent - and her trial arguments will likewise be based - on the fact that she believes she was treated differently than similarly situated Annuity Department CSRs relative to the Series 6 exam. In particular, Plaintiff contended in her summary judgment motion that male CSRs were given a longer period of time in which to pass the exam; that male CSRs were allowed to take the exam multiple times, but she was threatened with termination if she did not pass the exam on her first or second attempt; and that, unlike male CSR's, whose pay was increased once they obtained their Series 6 license, her pay was not quickly increased once she became licensed. (*See* Pl's Summary Judgment Opp. Memo. at 3-5, 25-26.)

The evidence obtained during discovery undercuts each of these factual allegations. The evidence further demonstrates that Plaintiff believed her two shoplifting convictions would bar her from obtaining a Series 6 license. To that end, she met with Union Central's Executive Vice President, John Jacobs, who intervened on her behalf to ensure she would be able to take the Series 6 exam and keep her job as a CSR. As Mr. Jacobs testified in his deposition:

> Question: Do you remember having any individual meetings with Ms. Scott?
>
> Jacobs: Yes.
>
> Question: Okay. Tell me what you can remember about that.
>
> Jacobs: The particular circumstance that I do specifically recall, Donna came to me with a concern about whether she would be able to secure a NASD license, which we had made a requirement for Annuity Service Reps. We were interested in cross-training all of our Reps to be able to value both variable

3

annuities and fixed annuities. And to do variable annuities we needed our people to be NASD-security licensed.

Donna and I discussed her concerns. I indicated I would check into how well founded those concerns were; in other words, was it going to be a problem? She had a hesitancy to fill out the application without knowing whether it was going to be an issue for the licensing or not. And then I proceeded to make those inquiries.

Question: Okay. This was a new requirement that the Company was putting in place for the Annuity Reps to have the NASD license?

Jacobs: Yes.

Question: What time frame are we talking about?

Jacobs: The best I can give you is the mid '90s.

Question: Okay.

Jacobs: I really couldn't pin down a year.

Question: And what do you recall about the nature of Donna's concern with the NASD license?

Jacobs: That there was something in her background that, in a background search, would be exposed that she felt could disqualify her from getting her license. And she was concerned, then, about her job if she got disqualified for the license.

(Jacobs Dep., pp. 16-17.)  Mr. Jacobs further testified that, in response to Plaintiff's concerns, he "contacted somebody…and asked them if they could make a discreet inquiry with the NASD as to whether a particular issue would or would not disqualify somebody [from taking the Series 6 exam]. I'm assuming, but I can't remember specifically, that I asked them to talk to Donna about what the particular issue was. And I recall that the answer came back that the issue she had a concern about -- the NASD said they would not disqualify her from being licensed and that, therefore, was not going to be an issue." (*Id.* at 17-18 (brackets added).)

Plaintiff's shoplifting convictions, and her meeting with John Jacobs, are thus both relevant to her ability to take the Series 6 exam, and to Union Central's efforts to help her take the exam and keep her job. *See* Fed. R. Evid. 401 (defining "relevant evidence"). If the Court is to bar Union Central from discussing the two convictions, Union Central will thus be unable, as a matter of equity, to present a fair and complete picture of the events surrounding Plaintiff's employment. In sum, Union Central will be unable to properly defend itself at trial without discussing Plaintiff's two criminal convictions and the work undertaken, by John Jacobs, on Plaintiff's behalf. Plaintiff's motion *in limine* should thus be denied.

### C. Plaintiff's Two Shoplifting Convictions Are Relevant Under Rule 401, and Admissible Under Fed. R. Evid. 404(b) as Evidence of "Other Crimes, Wrongs or Acts"

Federal Rule of Evidence 404(b) provides:

> **(b) Other Crimes, Wrongs, or Acts.** Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident….

Evidence of an employee's past crimes is admissible, in an employment discrimination case such as this one, to demonstrate pretext or the lack thereof, *i.e.,* to show that the employer (in this case, Union Central) did not have a discriminatory intent when it undertook the conduct at issue in Plaintiff's complaint. *Accord Ansel v. Green Acres Contracting Co., Inc.,* 347 F.3d 515, 521 (3d Cir. 2003) ("[O]ther acts are admissible under Rule 404(b) in the employment discrimination context for the proper purpose of establishing or negating discriminatory intent"). *Accord Manuel v. City of Chicago,* 335 F.3d 592, 596 (7th Cir. 2003) ("Other acts evidence may be relevant and admissible in a discrimination case to prove, for example, intent or pretext").

The United States Supreme Court has clarified that three requirements must be met for evidence of "other crimes, wrongs or acts" to be admissible: (1) the evidence must be relevant to a "material issue other than character"; (2) the probative value of the evidence must not be substantially outweighed by the risk of unfair prejudice; and (3) consistent with Fed. R. Evid. 105, "the trial court shall, upon request, instruct the jury that the similar acts evidence is to be considered only for the proper purpose for which it was admitted." *Huddleston v. United States,* 485 U.S. 681, 686, 691-92 (1988); *see also Conaway v. Baker County,* No. 02-35203, 2003 U.S.App. LEXIS 20022, at *3 (9th Cir. Sept. 29, 2003) (discussing *Conaway*).

The *Huddleston* three-part test is clearly met in this case:

**1.  The Evidence of Plaintiff's Two Shoplifting Convictions is Relevant to a Material Issue Other Than Her Character**

For the reasons just explained, the evidence of Plaintiff's two shoplifting convictions is relevant to a number of issues including, *inter alia,* Plaintiff's ability to take the Series 6 test, Plaintiff's decision to seek the advice and counsel of John Jacobs, and Jacobs's decision to intervene on Plaintiff's behalf to help her take the Series 6 test.

**2.  The Probative Value of the Evidence of Plaintiff's Two Shoplifting Convictions is Not Substantially Outweighed by the Risk of Unfair Prejudice**

A jury can be advised of a Plaintiff's past crimes, without being unduly prejudiced, if the jury is advised of the crimes in a non-inflammatory manner and with a minimal level of detail of the crimes. *See Conaway*, at *2-3. In this case, the jury need only be advised that Plaintiff had two shoplifting convictions. The circumstances of those convictions, and the amounts that Plaintiff shoplifted, need not ever be explained to the jury. With such limitations, the probative value of introducing the shoplifting evidence will not be substantially outweighed by the danger of unfair prejudice or confusion.

### 3. The Court May Instruct the Jury to Ensure That No Prejudice or Confusion Will Result

As explained in *Huddleston,* any risk of prejudice or confusion can be easily dealt with by the Court, by simply instructing the jury that it is to consider the evidence of Plaintiff's two shoplifting crimes for a proper purpose only.

## II. CONCLUSION

For the foregoing reasons, Union Central respectfully requests that the Court deny Plaintiff's motion *in limine* concerning Plaintiff's two prior shoplifting convictions.

Respectfully submitted,

/s/ Michael J. Newman
Deborah DeLong (0014174)
Michael J. Newman (0042684)
Dinsmore & Shohl LLP
1900 Chemed Center
255 East Fifth Street
Cincinnati, OH 45202
(513) 977-8646 (phone)
(513) 977-8141 (fax)

Trial Attorneys for Defendant,
The Union Central Life Insurance Company

7

8

## CERTIFICATE OF SERVICE

I hereby certify that on August 16, 2004 a copy of the foregoing was filed electronically and faxed to Plaintiff's counsel, Randolph H. Freking, Esq. and George M. Reul, Jr., Esq. Notice of this filing will be sent to all parties by operation of the Court's electronic filing system. Parties may access this filing through the Court's system.

    /s/ Michael J. Newman_____
Deborah DeLong (0014174)
Michael J. Newman (0042684)

1044955v3