

18 Fed.Appx. 342                                                                                                          Page 1
18 Fed.Appx. 342, 2001 WL 1006288 (6th Cir.(Ohio))
**(Cite as: 18 Fed.Appx. 342, 2001 WL 1006288 (6th Cir.(Ohio)))**

**H**
**Briefs and Other Related Documents**

This case was not selected for publication in the Federal Reporter.

NOT RECOMMENDED FOR FULL--TEXT PUBLICATION

Sixth Circuit Rule 28(g) limits citation to specific situations. Please see Rule 28(g) before citing in a proceeding in a court in the Sixth Circuit. If cited, a copy must be served on other parties and the Court.

Please use FIND to look at the applicable circuit court rule before citing this opinion. Sixth Circuit Rule 28(g). (FIND CTA6 Rule 28.)

United States Court of Appeals,
Sixth Circuit.

Marilyn H. WILLIAMS, Plaintiff-Appellant,
v.
GENERAL MOTORS CORPORATION, Defendant-Appellee.

No. 00-3256.

Aug. 24, 2001.

Female employee brought suit against employer alleging sexual harassment and retaliation under Title VII. Following summary judgment in favor of employer, the Court of Appeals, 187 F.3d 553, reversed and remanded. On remand, jury entered verdict in favor of employer. The United States District Court for the Northern District of Ohio denied employee's motion for new trial, and employee appealed. The Court of Appeals, Moore, Circuit Judge, held that: (1) company nurse's testimony that employee never sought medical treatment was admissible; (2) employer's affirmative action investigator's testimony was not hearsay; and (3) exclusion of evidence that female employee was forced to transfer to midnight shift did not warrant new trial.

Affirmed.

West Headnotes

**[1] Civil Rights** ⚿1147
78k1147 Most Cited Cases
    (Formerly 78k145)

While evidence of psychological harm may be relevant to determining whether plaintiff found the work environment to be hostile, it is not necessary to prove Title VII violation. Civil Rights Act of 1964, § 701 et seq., as amended, 42 U.S.C.A. § 2000e et seq.

**[2] Civil Rights** ⚿1542
78k1542 Most Cited Cases
    (Formerly 78k381)

Company nurse's testimony that employee never sought medical treatment for emotional distress was relevant to employee's claim in Title VII suit that her psychological well-being was adversely affected by sexually hostile work environment, even though employee had already conceded that she did not visit plant medical department for any symptoms relating to alleged sexual harassment, where nurse also testified that employee sought treatment from plant medical department for other physical conditions. Civil Rights Act of 1964, § 701 et seq., as amended, 42 U.S.C.A. § 2000e et seq.; Fed.Rules Evid.Rule 401, 28 U.S.C.A.

**[3] Evidence** ⚿317(2)
157k317(2) Most Cited Cases

Testimony of employer's affirmative action investigator regarding his investigation of employee's sexual harassment claims did not constitute hearsay, where records at issue were never admitted in evidence, records were used only to refresh investigator's memory, and testimony was used to show employer's affirmative defense to vicarious liability for supervisor harassment under Title VII. Civil Rights Act of 1964, § 701 et seq., as amended, 42 U.S.C.A. § 2000e et seq.; Fed.Rules Evid.Rule 801(c), 28 U.S.C.A.

**[4] Federal Civil Procedure** ⚿2334
170Ak2334 Most Cited Cases

Copr. © West 2004 No Claim to Orig. U.S. Govt. Works

18 Fed.Appx. 342                                                                                                                                        Page 2
18 Fed.Appx. 342, 2001 WL 1006288 (6th Cir.(Ohio))
**(Cite as: 18 Fed.Appx. 342, 2001 WL 1006288 (6th Cir.(Ohio)))**

Exclusion of evidence that female employee was forced to transfer to midnight shift did not warrant new trial in employee's Title VII sexually hostile work environment suit against employer, even though evidence was tenuously relevant to her subjective perception of hostile environment, in that she was led to believe she would not have to work midnight shift and then was compelled to do so by virtue of actions of co-worker whom she did not trust, where union rules required employee to accept transfer regardless of co-worker's actions. Civil Rights Act of 1964, § 701 et seq., as amended, 42 U.S.C.A. § 2000e et seq.

 **\*343** On Appeal from the United States District Court for the Northern District of Ohio.

 Before MOORE and COLE, Circuit Judges; and FORESTER, [FN*] District Judge.

> FN* The Honorable Karl S. Forester, Chief United States District Court Judge for the Eastern District of Kentucky, sitting by designation.

**\*344** OPINION

MOORE, Circuit Judge.

 **\*\*1** This case is an appeal from the district court's denial of a motion for new trial following a jury verdict for defendant-appellee General Motors Corporation on plaintiff-appellant Marilyn H. Williams's claim of sexual harassment. Williams asserts that the district court made three evidentiary errors which precluded her from receiving a fair trial. Because we do not believe that any of the claimed errors warrant a new trial, we AFFIRM the district court's judgment.

I. BACKGROUND

 Marilyn Williams, a thirty-year employee of Delphi Automotive Systems, Inc., formerly a division of General Motors Corporation ("GM"), brought suit against GM for claims of sexual harassment and retaliation under Title VII, 42 U.S.C. § 2000e *et seq.* She claimed that from September 1994 to May 1996 while she was working in the plant's tool crib, she was subjected to a hostile work environment because of her gender. She also claimed that she was retaliated against for filing a claim with the Ohio Civil Rights Commission. The district court granted summary judgment for GM on both of Williams's claims. Williams appealed the district court's judgment. A panel of this court affirmed the grant of summary judgment to GM on the retaliation claim but reversed and remanded on the claim of sexual harassment. *See Williams v. Gen. Motors Corp.,* 187 F.3d 553, 558 (6th Cir.1999).

 On remand, the district court conducted a trial on the charge of sexual harassment. After a two-day trial, the jury found that Williams could not prove that she had been subjected to a hostile work environment. Williams then filed a motion for a new trial, which was denied by the district court. She appeals from the denial of this motion.

 Before this court, Williams argues that she deserves a new trial because the district court erred by admitting and excluding certain pieces of evidence at trial. First, Williams alleges that the district court erred by allowing GM to present the testimony of Helen Lyden, the plant's nurse supervisor in their medical department. Lyden testified about the contents of two documents admitted in evidence - Williams's company medical records, and a medical questionnaire that Williams filled out - which demonstrated that Williams never reported to the medical department any feelings of mental anguish or physical symptoms associated with sexual harassment. Joint Appendix ("J.A.") at 180- 87. Second, Williams claims that the district court erred by allowing Clifford Roberts, the plant's affirmative action/legal affairs administrator, to testify about his investigation of Williams's complaint of sexual harassment. Williams alleges that Roberts improperly testified about the substance of his interviews with plant employees, based on the introduction of records which were hearsay that did not fall under any of the hearsay exceptions. Finally, Williams claims that the district court erred by refusing to allow her to testify about how she was transferred to a midnight shift, which would have supported her hostile environment theory.

II. ANALYSIS

A. Standard of Review

 **\*\*2** We review a district court's denial of a motion for new trial for an abuse of discretion. *Slayton v. Ohio Dep't of Youth Servs.,* 206 F.3d 669, 675 (6th Cir.2000). The district court's decision to admit or exclude evidence is also reviewed for an abuse of discretion. **\*345***Muzquiz v. W.A. Foote Memorial Hosp., Inc.,* 70 F.3d 422, 428 (6th Cir.1995). We will "view the evidence in the light most favorable to its proponent, giving the evidence its maximum

Copr. © West 2004 No Claim to Orig. U.S. Govt. Works

18 Fed.Appx. 342                                                                                                                          Page 3
18 Fed.Appx. 342, 2001 WL 1006288 (6th Cir.(Ohio))
**(Cite as: 18 Fed.Appx. 342, 2001 WL 1006288 (6th Cir.(Ohio)))**

reasonable probative force and its minimum reasonable prejudicial value." *Id.* (internal quotation omitted). An abuse of discretion occurs when the "reviewing court is firmly convinced that a mistake has been made regarding admission of evidence." *Nida v. Plant Protection Ass'n Nat'l,* 7 F.3d 522, 527 (6th Cir.1993) (quoting *Polk v. Yellow Freight Sys., Inc.,* 876 F.2d 527, 532 (6th Cir.1989)). Even if we find that an abuse of discretion has occurred, however, a new trial will not be granted unless a "substantial right of the party is affected." Fed.R.Evid. 103(a); see also *Slayton,* 206 F.3d at 677 (noting that "[r]eversal based on improper admission of evidence is appropriate only when the admission interfere[s] with substantial justice") (quoting *Morganroth & Morganroth v. DeLorean,* 123 F.3d 374, 382 (6th Cir.1997)).

B. Lyden's Testimony

At trial, GM offered the plant's nurse supervisor, Helen Lyden, as a rebuttal witness to Williams's testimony that she suffered from physical symptoms, such as headaches, sleeplessness, and back problems, as a result of the workplace sexual harassment. Williams claims that Lyden's testimony was not relevant either to Williams's claim of sexual harassment or to GM's affirmative defense, and that even if it were relevant, it was confusing and its prejudicial effect substantially outweighed its probative value. *See* Fed.R.Evid. 403. The testimony, according to Williams, confused the jury and misled them by focusing them improperly on whether Williams had suffered concrete psychological harm or physical injury as a result of her co-workers' and supervisor's conduct, neither of which is required to prove sexual harassment. Williams notes that, under *Harris v. Forklift Sys., Inc.,* 510 U.S. 17, 21-22, 114 S.Ct. 367, 126 L.Ed.2d 295 (1993), she is only required to prove that a reasonable person would have found her work environment to be hostile or abusive and that she subjectively perceived it to be so, not that she suffered from documented or reported psychological or physical harm.

[1] In *Harris,* the Supreme Court held that a hostile work environment occurs when "the workplace is permeated with discriminatory intimidation, ridicule, and insult that is sufficiently severe or pervasive to alter the conditions of the victim's employment...." *Harris,* 510 U.S. at 21, 114 S.Ct. 367 (internal citation and quotation omitted). Evidence that the conduct at issue was so severe or pervasive as to create a hostile work environment "may include the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." *Id.* at 23, 114 S.Ct. 367. Williams is correct that the Supreme Court specifically noted in *Harris* that while evidence of psychological harm may be relevant to determining whether the plaintiff found the work environment to be hostile, *see id.* at 23, 114 S.Ct. 367, it is not necessary to prove a Title VII violation, *see id.* at 22, 114 S.Ct. 367 (stating that while "Title VII bars conduct that would seriously affect a reasonable person's psychological well-being," the plaintiff need not wait to bring a claim until the conduct becomes "psychologically injurious").

**\*\*3** In an effort to establish that the conduct she complained of would have been perceived by a reasonable person, and was perceived by her, as creating a hostile working environment, Williams testified to the impact on her physical and emotional state of the various incidents forming her sexual harassment claim. When describing an incident in which her work area was **\*346** obstructed, she stated that she "started to panic" and "felt like there was some kind of conspiracy against me so I could fail." J.A. at 69-70. Asked about another incident in which she perceived that she was locked into her work station, she again stated that she "panicked." J.A. at 72. She noted later in the course of her testimony that she "felt violated" by the various incidents she alleged to have occurred. J.A. at 74. She then stated that: "I felt threatened. There was a lot of stress. I was having trouble sleeping. Some back problems. I felt humiliated. I was having a lot of headaches." *Id.* When asked whether she sought treatment for these ailments, she responded affirmatively. *Id.*

On cross-examination, Williams conceded that she did not take sick leave as a result of any of the allegedly harassing incidents, J.A. at 137, nor did she visit the plant medical department on one of the specific dates on which she alleged a harassing incident to have occurred, J.A. at 134. She then agreed that she had visited the medical department for a variety of injuries or problems from 1994 to 1996, including hitting her leg with a ladder, pain in her foot, sinus problems, and a cold, but that she did not visit the medical department for "stress or discrimination or coworker harassment or anything like that." J.A. at 141-42.

As noted above, whether a plaintiff perceives the

Case 1:02-cv-00075-HJW    Document 49-2    Filed 08/22/2004    Page 4 of 6

18 Fed.Appx. 342                                                                                       Page 4
18 Fed.Appx. 342, 2001 WL 1006288 (6th Cir.(Ohio))
**(Cite as: 18 Fed.Appx. 342, 2001 WL 1006288 (6th Cir.(Ohio)))**

conduct at issue in a sexual harassment claim to be "physically threatening or humiliating" or whether the plaintiff's "psychological well-being" was affected is relevant to proving that the conduct complained of was sufficiently severe or pervasive to constitute a hostile work environment. Harris, 507 U.S. at 23, 113 S.Ct. 1238. Therefore, Williams's testimony about her physical and emotional condition following the incidents at issue was both relevant and highly probative of whether she experienced her work environment to be hostile and whether a reasonable person would so perceive it to be hostile.

Once Williams put her physical and emotional condition in evidence, however, GM was entitled to cross-examine her about it, which it did, and to introduce evidence tending to cast doubt on her credibility. Lyden's testimony was introduced for this latter purpose. Lyden testified that Williams's company medical records for the time period at issue reflected that Williams had never sought treatment at the plant's medical department for symptoms relating to sexual harassment. J.A. at 184-86. Specifically, Lyden testified that from February 1994 to July 1996 Williams never complained of job stress, sleeplessness, or humiliation. Lyden did acknowledge that Williams reported a headache due to sinus problems. J.A. at 185. Williams's attorney noted a continuing objection to Lyden's testimony, [FN1] J.A. at 185, but the district court permitted her to continue testifying. Lyden then testified that a medical questionnaire which Williams had completed for the medical department pursuant to a federal agency requirement did not indicate that Williams's job assignment had any effect on her health, nor did it indicate that she suffered from nervousness, difficulty sleeping, or frequent or severe headaches. J.A. at 186-87.

> FN1. GM argues that Williams's attorney did not offer a "specific objection" to Lyden's testimony and that, therefore, we must consider her objections to be waived. Because the ground for the attorney's objection was clear from its context (unfair prejudice), and because he continues to argue the same ground for the objection before this court, we conclude that the objection was properly made and preserved.

**\*\*4** [2] We believe that GM properly established the foundation for Lyden's testimony about Williams's medical history by having Lyden testify about the kinds of **\*347** medical problems that were commonly reported to her, such as headaches and upset stomachs, and the fact that the medical department documented every time an employee visited the medical department for care. J.A. at 179-81. Lyden's testimony was partially cumulative of Williams's testimony, because Williams had already conceded that she did not visit the plant medical department for any symptoms relating to the alleged sexual harassment. Nevertheless, in light of the fact that Williams testified that she reported and sought treatment from the plant medical department for other physical conditions, but not those associated with the alleged harassment, during the relevant time frame, Lyden's testimony was relevant because it tended to make less probable or cast doubt upon Williams's assertion that her work environment was so permeated with discriminatory conduct that it caused her to suffer from physical symptoms such as headaches and backaches. *See* Fed.R.Evid. 401 (defining relevant evidence as evidence "having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence"). Therefore, we conclude that the district court did not abuse its discretion by allowing Lyden to testify.

Our conclusion notwithstanding, any possible prejudice or confusion caused by Lyden's testimony was cured by the district court's instructions to the jury. The district court instructed the jury that, consistent with the Supreme Court's directive, "the effect on the plaintiff's psychological well-being" was but one factor that *may* tend to establish whether an environment is hostile or abusive. J.A. at 242. The district court did not instruct the jury that it was required to find that the plaintiff's psychological well-being was affected, much less that the plaintiff was required to show psychological or physical injury. Because this instruction would have cured any prejudice from Lyden's testimony, we reject Williams's claim that the introduction of the disputed testimony caused her substantial prejudice.

C. Roberts's Testimony

Williams's second claim of error centers on Roberts's testimony about his investigation of Williams's claim of sexual harassment. Williams argues that Roberts was improperly allowed to testify to the content of statements made to him in the course of his investigation of Williams's complaint. These statements were hearsay, Williams contends, and were not properly admitted under Fed.R.Evid.

Case 1:02-cv-00075-HJW   Document 49-2   Filed 08/22/2004   Page 5 of 6

18 Fed.Appx. 342                                                                                                                        Page 5
18 Fed.Appx. 342, 2001 WL 1006288 (6th Cir.(Ohio))
**(Cite as: 18 Fed.Appx. 342, 2001 WL 1006288 (6th Cir.(Ohio)))**

803(6), the business records exception to the hearsay rule, because the records were made in preparation for this litigation.

GM counters that the records at issue were never admitted in evidence, inasmuch as they were excluded by the district court after Williams's attorney objected to their use. GM also points out that the records were used only to refresh Roberts's recollection, and for that purpose they did not need not be admissible. Finally, GM argues that Roberts's testimony concerning the content of the records was offered only to show GM's response to Williams's claim of sexual harassment, which was relevant to its affirmative defense, not for the truth of the matter asserted.

**\*\*5** At trial, Roberts testified that, after receiving notice that Williams had filed an EEOC claim, he began an investigation into her claim. J.A. at 191. In the course of his investigation, Roberts testified that he interviewed several witnesses identified by Williams and documented those interviews. J.A. at 197. The record reveals that when GM attempted to introduce the substance of those documents, the district court gave an instruction to the jury on supervisory liability and the elements of GM's affirmative defense. J.A. at 204a-**\*348** 204c. The district court then instructed the jury that he was going to allow Roberts to testify about what a witness told him, but "only for the purpose of demonstrating what was received by way of information." The testimony was "not to be accepted for the truth of the matter as to what the witness ... said, but merely the fact that they had heard the declarations of the person." J.A. at 205.

Thereafter, Roberts testified about how Williams's supervisor and alleged harasser Pat Ryan responded when confronted with her complaint of sexual harassment, as well as to the substance of Roberts's interviews with three witnesses identified by Williams. J.A. at 205-12. According to Roberts, in addition to the four witnesses identified by Williams, he interviewed everyone who was in the general area where the harassing incidents allegedly occurred; he then testified that no one provided him with any information that could corroborate Williams's version of the events. Due to this lack of corroborating evidence, Roberts determined that there "was no action" that the company could take against any of the individuals who allegedly harassed Williams. J.A. at 212.

[3] We note first that GM is correct that the disputed documents were never admitted in evidence, as the district court excluded them upon Williams's objection. J.A. at 234. Moreover, the district court instructed the jury that it was permitting Roberts to testify as to the substance of his conversations with company employees, not for the truth of the matter asserted, but in order to show Roberts's course of conduct upon learning of Williams's complaint. J.A. at 205. Therefore, Roberts's testimony was not hearsay at all. See Fed.R.Evid. 801(c) (defining hearsay as "a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted").

Roberts's testimony about the fact of his conversations with other company employees and the steps that he took to investigate Williams's complaint was clearly relevant to GM's affirmative defense to vicarious liability for supervisor harassment under *Faragher v. City of Boca Raton,* 524 U.S. 775, 807, 118 S.Ct. 2275, 141 L.Ed.2d 662 (1998). *Faragher* established that when a plaintiff does not allege a tangible employment action as a result of the supervisor's harassment, as in this case, the employer is permitted to raise an affirmative defense to its vicarious liability, subject to proof by preponderance of the evidence. The defense has two elements: "(a) that the employer exercised reasonable care to prevent and correct promptly any sexually harassing behavior, and (b) that the plaintiff employee unreasonably failed to take advantage of any preventive or corrective opportunities provided by the employer or to avoid harm otherwise." *Id.* Roberts's testimony was relevant to whether GM took reasonable care to correct promptly the harassing behavior Williams identified. Roberts's testimony that none of the witnesses with whom he spoke corroborated Williams's version of the events went to show the company's reasonableness in failing to take action against any of Williams's harassers, and was therefore properly admitted.

**\*\*6** Although we believe that there was a potential for prejudice from Roberts's testimony about the content of his conversations with company employees, we believe that the district court's instruction to the jury to consider the testimony not "for the truth of the matter as to what the witness ... said," but "only for the purpose of demonstrating what was received by way of information," J.A. at 205, cured any potential prejudice. Even if it were error for the district court to allow Roberts to testify as to the content of these conversations **\*349** under Fed.R.Evid. 403, we do not believe the district court's

18 Fed.Appx. 342                                                                                                                              Page 6
18 Fed.Appx. 342, 2001 WL 1006288 (6th Cir.(Ohio))
**(Cite as: 18 Fed.Appx. 342, 2001 WL 1006288 (6th Cir.(Ohio)))**

error "interfere[d] with substantial justice." *Slayton, 206 F.3d at 677.* Therefore, Williams's second claim of error must also be rejected.

D. Excluded Evidence of Shift Transfer

Finally, Williams contends that the district court improperly refused to allow her to testify about the circumstances surrounding her transfer to the midnight shift in the tool crib area. J.A. at 64-65. According to Williams, this incident contributed to her hostile work environment. Williams would have testified that one of her co-workers, whom she had accused of harassing her in other incidents, had originally accepted the midnight shift and then rejected it knowing that Williams would be forced to take it. The district court disallowed this proposed testimony as irrelevant, after noting at sidebar that Williams was required by union rules to take the midnight shift if no one else wanted it because she had the least seniority in the tool crib.

[4] We have already held that the evidence of Williams's transfer to the midnight shift did not support her claim for retaliation because GM could not be faulted for the impact of union rules on Williams's work schedule. *Williams,* 187 F.3d at 568. GM argues that, pursuant to this holding, Williams is precluded by law of the case doctrine from attempting to introduce this evidence to support her sexual harassment claim. Whether or not the law of the case doctrine applies, we conclude that the failure to admit this testimony did not affect Williams's substantial rights. Although the testimony was tenuously relevant to Williams's subjective perception of a hostile environment, in that she was led to believe she would not have to work the midnight shift and then was compelled to do so by virtue of the actions of a co-worker whom she did not trust, the evidence was not so probative that the failure to admit it prejudiced her at trial. Had she testified to this incident, GM would then have brought out the fact that she had to accept the midnight shift if no one else wanted it, and that she would have been forced to accept it regardless of her co-worker's actions. This admission would likely have negated all probative value of the testimony. Therefore, we hold that the district court's failure to admit this testimony does not warrant a new trial.

### III. CONCLUSION

For the foregoing reasons, we AFFIRM the district court's denial of the plaintiff's motion for new trial.

18 Fed.Appx. 342, 2001 WL 1006288 (6th Cir.(Ohio))

Briefs and Other Related Documents (Back to top)

• 00-3256 Docket) (Mar. 01, 2000)

END OF DOCUMENT

Copr. © West 2004 No Claim to Orig. U.S. Govt. Works