UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | |
|---|---|
| DONNA SCOTT, | Civil Action No. C-1-02-075 |
| Plaintiff, | Judge Weber |
| v. | |
| THE UNION CENTRAL LIFE INSURANCE COMPANY, | **DEFENDANT'S MEMORANDUM IN OPPOSITION TO PLAINTIFF'S RENEWED RULE 50(b) MOTION FOR JUDGMENT AS A MATTER OF LAW (DOC. 80)** |
| Defendant. | |

Plaintiff's Renewed Motion for Judgment as a Matter of Law (doc. 80) is not well taken, and should be denied.

On August 31, 2004, a jury - following a five-day trial before Judge Weber - rendered a verdict in favor of Defendant, The Union Central Life Insurance Company, on the nine claims pled in this case by Plaintiff Donna Scott: retaliation under federal and state law (Complaint Counts I and II); gender discrimination under federal and state law (Complaint Counts III and IV); age discrimination under federal and state law (Counts V and VI); unequal pay under federal and state law (Counts VII and VIII); and a violation of Ohio public policy (Count IX). *See* docs. 68 (Jury Verdict), 69 (Order by the Court), 70 (Clerk's Entry of Judgment in favor of Defendant Union Central).

During the trial, Plaintiff, through counsel, moved for judgment as a matter of law, which the Court denied. Now that the jury has rendered a verdict in favor of Defendant on all counts pled in Plaintiff's complaint, Plaintiff renews her motion pursuant to Rule 50(b). In her renewed motion, Plaintiff challenges the jury's verdict solely with regard to its decision on her retaliation claims, *i.e.,* Complaint Counts I and II. *See* Renewed Motion, at p.1.

A.   **STANDARD OF REVIEW**

As the Sixth Circuit has explained:

> We must affirm the jury verdict unless there was "no legally sufficient evidentiary basis for a reasonable jury to find for [the prevailing] party." Fed. R. Civ. P. 50(a). We draw all reasonable inferences in favor of the prevailing party, and we do not make any credibility determinations or weigh the evidence. *Reeves* [*v.Sanderson Plumbing Prods., Inc.,* 530 U.S. 133 (2000)] at 150. Therefore, we "must disregard all evidence favorable to the moving party that the jury is not required to believe." *Id.* at 151.

*White v. Burlington Northern & Sante Fe Railway Co.,* 364 F.3d 789, 794-95 (2004) (*en banc*).

As the Sixth Circuit has also found, with respect to a Rule 50(b) motion:

> The evidence should not be weighed, and the credibility of the witnesses should not be questioned.[] *Williams* [*v. Nashville Network*], 132 F.3d [1123 (6th Cir. 1997)] at 1130-31. Further, evidence is viewed in the light most favorable to the non-movant, and all reasonable inferences are drawn in that party's favor. *Id.* at 1131. Th[e] [District] Court should grant the motion only if "reasonable minds could not come to a conclusion other than one favoring the movant." *Id*. Our task also embodies assuring that the district court "indulged all presumptions in favor of the validity of the jury's verdict," and "refrained from interfering with [the] jury's verdict unless it [was] clear that the jury reached a seriously erroneous result." *Id*.

*Conwood Co., L.P. v. United States Tobacco Co.,* 290 F.3d 768, 781 (6th Cir. 2002).

B.   **ARGUMENT**

   1.   **Plaintiff Mischaracterizes the Evidence When She Claims that Two Union Central Managers Testified Her Complaints Were a Motivating Factor in Union Central's Decision to Terminate Her Employment. Plaintiff Was Terminated Because of a Pattern of Dishonesty and False Accusations Against Her Supervisor, and Both of the Managers in Question (Rebecca Deppen and Richard Pretty) Testified Those Were the Reasons for Her Termination.**

In support of her motion, Plaintiff first argues that two Union Central managers --

Plaintiff's supervisor, Rebecca Deppen, and Deppen's supervisor, Richard Pretty, the Vice

President in charge of Union Central's Annuity Division -- both testified that Plaintiff's complaints of discrimination were a motivating factor in Union Central's decision to terminate her employment.

That argument mischaracterizes the evidence. Plaintiff was terminated because of her pattern of dishonesty and her false accusations against Union Central management, and both Ms. Deppen and Mr. Pretty so testified at trial.

In her Renewed Motion, Plaintiff cites to the page 54 of the trial transcript as proof that her complaints of discrimination motivated her termination. On page 54, Ms. Deppen, contrary to Plaintiff's argument, testified as follows:

> Q: Okay. What is your understanding of the reason for her termination?
>
> Deppen: For the dishonesty aspect of making false claims against me, telling the division -- or telling him [*i.e.,* Mr. Pretty] that I told the division to lie on a regular basis….

Trial Transcript (copy attached to Plaintiff's Renewed Motion as Ex. A), p. 54, lines 11-15 (brackets added).

Plaintiff also cites to page 206 of the trial transcript as proof that Mr. Pretty -- the individual who actually made the termination decision -- was motivated to discharge Ms. Scott, in part, because of her complaints. But, again, the trial testimony is totally contrary to Plaintiff's reading of the evidence:

> Q: I know you decided to fire Miss Scott because of something.
>
> Pretty: False accusations, yes.

Trial transcript, p. 206, lines 16-17.

The evidence before the jury thus did not suggest that Plaintiff's complaints were a motivating factor in Union Central's decision to terminate her employment.

3

**2.    Plaintiff Cannot Meet the High Burden Needed For a Successful Rule 50(b) Motion Because There Was A "Legally Sufficient Evidentiary Basis" For the Jury to Find in Favor of Defendant on Plaintiff's Retaliation Claims, and the Jury's Verdict, With Respect to Those Claims, Does Not Constitute a "Seriously Erroneous Result"**

As the above caselaw makes clear, the District Court cannot substitute its judgment for that of the jury. Instead, Plaintiff's Rule 50(b) motion must be denied if there was a "legally sufficient evidentiary basis" for a reasonable jury to render a verdict in favor of Defendant Union Central on Plaintiff Donna Scott's retaliation claims. In conducting that analysis, the Court must weigh the evidence before the jury in Defendant (the non-movant's) favor, draw all reasonable references from that evidence in Defendant's favor, and "indulge all presumptions in favor of the validity of the jury's verdict." *See supra.* The verdict can then be overturned only if it is "clear" to the Court that the jury reached a "seriously erroneous result" regarding Scott's retaliation claims.

That is an extremely high burden to meet, and nothing in Scott's Renewed Rule 50(b) Motion suggests it is 'clear' that the jury reached a 'seriously erroneous result' when it rendered a verdict, on Plaintiff's retaliation claims, in Union Central's favor. The evidence before the jury, when viewed in the light most favorable to Union Central, suggests, *inter alia,* that:

- Ms. Scott was a Client Service Representative ("CSR") in Union Central's Annuity Service Division;

- Ms. Scott was supervised by Rebecca Deppen. (Ms. Deppen testified before the jury, and her credibility was thus evaluated by the jury.);

- Ms. Deppen, in turn, reported to Richard Pretty, the Vice President in charge of the Annuity Division. (Mr. Pretty, likewise, testified before the jury and his credibility was thus also evaluated by the jury.);

4

- Ms. Deppen and Mr. Pretty both received numerous complaints about Ms. Scott's job performance, *e.g.*, her failure to answer the phone, her failure to return phone calls, her failure to handle matters properly. (In fact, Deppen received more complaints about Ms. Scott than any other CSR who reported to her.);

- Ms. Scott refused to accept responsibility for these problems, and blamed other people for them;

- At the same time these problems were occurring with frequency, Union Central started receiving a number of letters from policyholders which complimented Ms. Scott's performance. Scott used these letters to nominate herself for Union Central "Key Awards." A Key Award is a recognition given to CSRs for providing outstanding customer service;

- Ultimately, Union Central determined that Ms. Scott had improperly solicited these complimentary letters from policyholders herself, and that she had also included false information in the multiple form letters she sent to the policyholders whom she was supposed to be assisting. One such letter, admitted into evidence and reviewed by the jury, was dated November 13, 2000 and mailed to policyholder Norbert Vadus, but addressed, mistakenly, to a Mrs. Jones. *See* Def. Ex. B. At the bottom of the letter, Scott wrote - as if to acknowledge her wrongdoing - "P.S. Please throw this letter away - Thanks!" In that letter, Ms. Scott falsely stated, in an apparent attempt to quickly obtain a complimentary letter from a policyholder, that "[n]ext month is my yearly review…." In truth, her review was not scheduled until the following February;

- The annuity policyholders with whom Ms. Scott dealt often were elderly individuals concerned about prompt processing of their requests for annuity withdrawals. As such, they were vulnerable to requests such as the one made by Ms. Scott in her solicitation letters. Union

5

Central was extremely concerned that the policyholders would feel that Union Central's service would not be prompt if they did not provide the commendation letter Ms. Scott requested;

- In February 2001, Ms. Scott was given a written reprimand for this conduct, and that reprimand - referred to by Union Central as a "For the Record" - was admitted into evidence and reviewed by the jury. *See* Pl. Ex. 2;

- At the February 2001 meeting in which Ms. Scott was given the "For the Record" written discipline, she made allegations that Ms. Deppen had "singled her out" for a "consistent pattern of harassment, discrimination and disparate treatment." Ms. Scott then accused Ms. Deppen of (1) telling the Annuity Department workers she supervised to lie, (2) telling another Annuity Division employee, Edwin Ericson, to lie about a particular situation, and (3) telling Ms. Scott that she was "old and tired and needed a new job";

- Mr. Pretty considered these allegations serious, and he assigned a Human Resources official, Connie Retherford, to undertake a formal investigation. Ms. Retherford (who also testified before the jury) found all three accusations untrue;

- Following Ms. Retherford's investigation, Mr. Pretty determined that Ms. Scott had been dishonest and untruthful in her accusations regarding her supervisor, Ms. Deppen. Accordingly, he terminated Ms. Scott's employment, in April 2001, for what he reasonably perceived -- based on his reasonable business judgment, and the facts before him -- as a pattern of dishonesty by Ms. Scott. *See* Trial Transcript (attached as Exhibit A to Scott's Renewed Rule 50(b) Motion) at p. 206, line 17 (Pretty testifying that he terminated Scott for her "false accusations"); and

- Mr. Pretty, who made the decision to terminate Ms. Scott's employment, testified before the jury that, "[W]hen I found those things to be false accusations and combined that with the

6

letter writing that had been done to customers inappropriately using some dishonesty or deception in that with respect to when her reviews were actually coming up and why she was asking, soliciting that kind of information, combined that with the fact that she used that to win our Key Award campaign -- or Key Award program to have an advantage over her fellow workers, that whole picture, to me, was a pattern of dishonesty and deception and grounds for termination." Trial Transcript (attached as Exhibit A to Scott's Renewed Rule 50(b) Motion) at p. 217, lines 2-11.[1]  When asked why Scott was terminated, Pretty testified that, "She was terminated for dishonesty. That was the reason that was grounds for immediate termination." *Id.* at p. 217, lines 14-15.

This trial evidence and testimony, when viewed in the light most favorable to Defendant Union Central, the non-movant, is clear and unmistakable that Ms. Scott was terminated for a pattern of dishonesty, not on account of retaliation. The jury thus did not make a "seriously erroneous result" in rendering a verdict against Ms. Scott's state and federal retaliation claims. Accordingly, her Renewed Rule 50(b) Motion should be denied.

    **3.**    **It Was Reasonable for the Jury to Find that Union Central Had a Legitimate, Non-Discriminatory Reason to Terminate Ms. Scott's Employment, and That Reason Was Not Pretextual**

Plaintiff last argues that the jury should have returned a verdict in her favor because she demonstrated a *prima facie* case of retaliation. Even if the Court were to assume, *arguendo,* that she did so, the trial evidence discussed above makes clear that the jury had before it ample evidence, when viewed in the light most favorable to Union Central, from which to reasonably determine that Union Central had a legitimate, non-discriminatory reason to terminate Ms. Scott's employment (her pattern of dishonesty and deception); that Union Central did not

---

[1] This trial testimony has been mistakenly marked as "Deppen - Direct," but both parties to the case agree that the testimony is that of Mr. Pretty, not Ms. Deppen. *See* Scott's Renewed Motion, at p. 5 (referring to the trial testimony on pages 217 and 218 of the transcript as Mr. Pretty's testimony, not Ms. Deppen's testimony).

retaliate against Ms. Scott; and that Union Central's termination decision was not pretextual. Accordingly, the jury did not reach a "seriously erroneous result" when it found in favor of Union Central regarding Donna Scott's retaliation claims.

### 4. Recognizing That Plaintiff Does Not Challenge the Jury's Verdict With Regard To Any of Her Other Claims Besides Retaliation, The Jury's Verdict Regarding Those Other Claims (Claims III Through IX) Merits Affirmance

In her Renewed Rule 50(b) Motion, Plaintiff argues that the jury erred in one respect only: With regard to its analysis of her retaliation claims pled under federal and state law (*i.e.,* Complaint Counts I and II).  *See* Renewed Motion, at p. 1.  Recognizing that Plaintiff thus concedes that the jury did not err with regard to its analysis of her remaining claims -- of gender discrimination, age discrimination, unequal pay and Ohio public policy (*i.e.,* Complaint Counts III through IX) -- the jury's verdict, by Plaintiff's own admission, merits affirmance and should be affirmed with respect to those seven remaining claims.

### C. CONCLUSION

For the foregoing reasons, Defendant, The Union Central Life Insurance Company, respectfully requests that Plaintiff's Renewed Rule 50(b) Motion be denied.

Respectfully submitted,

/s/ Deborah DeLong
Deborah DeLong (0014174)
Michael J. Newman (0042684)
Dinsmore & Shohl LLP
1900 Chemed Center
255 East Fifth Street
Cincinnati, OH 45202
(513) 977-8646 (phone)
(513) 977-8141 (fax)

Trial Attorneys for Defendant,
The Union Central Life Insurance Company

8

## **CERTIFICATE OF SERVICE**

I hereby certify that on October 12, 2004 a copy of the foregoing was filed electronically.

Notice of this filing will be sent to all parties by operation of the Court's electronic filing system.

Parties may access this filing through the Court's system.

/s/ Michael J. Newman
Michael J. Newman (0042684)

1061264v2